## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EDWARD BURLEY,

    *Plaintiff*,                          CASE NO. 16-cv-10712

*v.*                                DISTRICT JUDGE GEORGE CARAM STEEH
                                      MAGISTRATE JUDGE PATRICIA T. MORRIS

MICHIGAN DEPARTMENT
OF CORRECTIONS, DANIEL HEYNS,
HEIDI WASHINGTON, THOMAS FINCO,
JOANN BRIDGFORD, BLAIN LAFLER,
WILLIE SMITH, CATHY STODDARD,
JOHN PRELESNIK, TRIEWEILER,
THOMAS BIRKETT, RANDALL HAAS,
JEFFREY WOODS, ROGER GERLACK,
M. PELON, SHERRY, J. QUIROGA,
WILLIAMSON, J. KOENIGSKENCHT,
SCOTT HOLMES, STEPHENSON,
KNICKERBOCKER, R. KLATT,
J. VERBONCONER, JOHN DOE,
and STEPHEN MOORE,

    *Defendants*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION TO AMEND (DOC. 58) AND MOTION FOR SUMMARY JUDGMENT (DOC. 65)

## I.    RECOMMENDATION

For the reasons set forth below, I recommend that:

- Burley's motion to amend (**Doc. 58**) be **GRANTED IN PART** insofar as he seeks to add Guilkie as a defendant, and **DENIED IN PART** as to all other newly named proposed defendants;

- The state defendants' Motion for Summary Judgment (**Doc. 65**) be **GRANTED IN PART** such that Burley's complaint be dismissed as against MDOC, Heyns, Washington, Finco, Bridgford, Lafler, Smith, Stoddard, Prelesnik, Trierweiler, Birkett, Haas, Woods, Pelon, Koenigskencht, Stephenson, Knickerbocker, Verbonconer, Moore, and the John and Jane Doe defendants, and **DENIED IN PART** as to defendants Klatt and Guilkie.

## II.      REPORT

### A.      Introduction and Background

On February 25, 2016, Plaintiff Edward Burley filed the instant complaint against the Michigan Department of Corrections ("MDOC"), Daniel Heyns, Heidi Washington, Thomas Finco, Joanne Bridgford, Blaine Lafler, Willie Smith, Cathleen Stoddard, John Prelesnik, Patrick Trieweiler, Thomas Birkett, Randall Haas, Jeffrey Woods, Michelle Pelon, Jacque Koenigskencht, George Stephenson, Joseph Knickerbocker, Russell Klatt, James Verbonconer, Stephen Moore, along with certain Jane and John Doe defendants ("the state defendants") and defendants Sherry, Roger Gerlack, and Scott Holmes ("the non-state defendants"). (Doc. 1). On April 15, 2016, District Judge Steeh referred all pretrial matters in this case to the undersigned magistrate judge. (Doc. 8).

Burley alleges, in essence, that he suffers from hearing impairment, and that Defendants have failed to provide him with accommodations for his disability, including access to interpreters, videophones, amplifiers, hearing aids, and certain other audio-visual equipment which would permit him to more fully participate in  academic classes, training, medical care, disciplinary hearings, religious ceremonies, and family visits, and have placed him at risk in case of an emergency, whereby warnings are conveyed using audio cues. (Doc. 1 at 2-3). Further, Burley asserts that Defendants sometimes single out hearing impaired inmates for abusive or disparate treatment. (*Id*. at 3, 19-20). Burley alleges that Defendants have thereby denied his rights First Amendment and Fourteenth Amendment, and have violated the Americans with Disabilities Act ("ADA") 42 U.S.C § 12101 *et seq*., and the Rehabilitation Act 29 U.S.C. § 794 *et seq*. (*Id*. at 9-39).

As relief, Burley seeks monetary damages in the amount of $100 per day that his rights have been violated, and $1,000,000 in punitive damages. (Doc. 1 at 39). In terms of injunctive relief, he seeks an injunction requiring the defendants to provide adequate services and facilities for deaf inmates. (*Id*.). He also seeks a declaration that defendants violated various statues and Constitutional provisions, an award of attorney's fees, and any further relief the Court finds proper. (*Id*.).

The Court notes that the non-state defendants, along with the named but unserved defendants Quiroga and Williamson, have not filed a dispositive motion in this case, and have not joined in the state defendants' motion for summary judgment. As discussed below, Burley's failure to properly exhaust grievances merits summary judgment in favor of most of the state defendants in this case. Assuming that the state defendants have accurately and fully reproduced all of Burley's properly exhausted grievances, summary judgment might likewise be appropriate as to some or all of the non-moving defendants. However, the state defendants do not have an incentive to advocate on behalf of these non-moving parties, and dismissal of the non-moving parties requires an unnecessarily high degree of speculation. The Court will therefore not recommend dismissal of the non-state defendants, Quiroga, or Williamson at this time.

### B.    Burley's Proposed Amended Complaint (Doc. 58)

On June 30, 2016, Burley filed a self-styled "proposed amended complaint." (Doc. 58). In that pleading, Burley alleges that Defendant Assistant Resident Unit Supervisor ("ARUS") Yall, Edward Hunt, Warden Birkett, Resident Unit Manager ("RUM") Guilkie, ARUS Snyder, Special Accommodation Coordinator Foy, Dr. Czop, Rhonda Rider, ARUS Daniels, ARUS Bradley, and Holtz violated his rights by denying him certain accommodations. (Doc. 58 at 1-

8). The Defendants named in the proposed amended complaint are labeled Pine River Defendants, Ionia Correctional Defendants, and Coldwater Defendants. Burley further alleges that the foregoing defendants, with the exception of Guilkie and Snyder, perpetrated acts of intentional infliction of emotional distress. (*Id.*). In Plaintiff's original complaint, he referenced occurrences at the Carson City, Coldwater, Ionia, Pine River, Chippewa, Richard Handlon, Kinross, and Macomb Correctional Facilities. (Doc. 1.)

Plaintiff does not attach, as required by Local Rule 15, the entire proposed complaint (with the old allegations and the new allegations combined into one document) and instead lists only new allegations.

Although the motion is titled as one to amend, Plaintiff also states that he "now supplements the existing complaint as follows" and he then proceeds to describe the "personal involvement of supplemented Defendants[.]'" Thus, it is not clear, on the face of the document, whether it is a motion to amend or to supplement.

When a party wishes to amend a pleading after the opposing party's responsive pleading has been served, it may only do so by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). When a motion for leave to amend is before the court, Rule 15(a) provides that "leave shall be freely given when justice so requires." Id. "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality," *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995), because, despite the Rule's liberality, leave to amend "is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). The decision to

grant or deny a motion to amend is left to the sound discretion of the district court. *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 591 (6th Cir. 1990).

When determining whether to grant leave to amend, the court is to consider several factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). Courts may also consider whether the matters contained in the proposed amended complaint are unrelated to claims in the original complaint. *Hetep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001).

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Here, the events giving rise to Plaintiff's desire to amend his complaint occurred after those described in the original complaint and involve proposed defendants employed at a subsequent prison. However, like the motion to amend, "a supplemental pleading cannot be used to introduce a separate, distinct and new cause of action." *Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1238 (N.D. Cal. 2008). Instead, "[t]here must be some relationship or linkage between the claims asserted in the original complaint and the supplemental claims." *Imelmann v. Michigan Dep't of Corr.*, No. 12-10671, 2012 WL 2917514, at *1 (E.D. Mich. July 17, 2012).

Birkett is already a Defendant in this case and he is described as Warden of the Pine River Correctional Facility. Since Plaintiff is currently housed at the Saginaw Correctional Facility, it would appear that allegations against Birkett are not based on events occurring after the filing of the original complaint and thus are properly construed as a motion to amend rather than to supplement. Also, since Plaintiff does not include any Saginaw Correctional Facility Defendants in his motion, it further appears that he is truly seeking to amend rather than to supplement. I also note that proposed Defendants Daniels and Guilkie are discussed in Plaintiff's original complaint. (Doc. 1 at ID 33, 36.)

Defendants concede that Plaintiff properly exhausted against Defendant Klatt. (Doc. 65 at ID 332; Doc. 71 at ID 723.) As discussed more fully below, Burley's failure to exhaust claims against any defendant in his motion to amend, save for Guilkie, renders his attempt to add those defendants futile. *See Wilson v. Hill*, No. 2:08-CV-552, 2011 WL 798052, at *3 (S.D. Ohio Mar. 1, 2011) (denying motion to amend where prisoner plaintiff wished to include new claims which were not fully and specifically exhausted, because such amendment was futile). Accordingly, Burley's motion to amend (Doc. 58) should be denied as to all proposed defendants except Guilkie.

## C.    Motion for Summary Judgment

On August 5, 2016, the state defendants filed a motion for summary judgment. (Doc. 65.) Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The court must determine

6

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

### i. Grievance Exhaustion

#### a. The Grievance Process

The state defendants argue, by way of affirmative defense, that nearly all of Burley's claims in his complaint are non-meritorious because he has failed to exhaust his grievances

7

through the administrative grievance process. (Doc. 65 at 12-35). Burley is a prisoner in the custody of the MDOC. The Prison Litigation Reform Act requires prisoners to exhaust their administrative remedies prior to bringing a civil action in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Proper exhaustion is mandatory. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Ch*urner, 532 U.S. 731 (2001); *Woodford v. Ngo*, 548 U.S. 81 (2006). To meet the exhaustion requirement, Burley must demonstrate compliance with the MDOC's grievance policies, including its deadlines and procedural rules. *Woodford*, 548 U.S. at 90. Thus, examination of the MDOC's grievance policies, set forth in MDOC Policy Directive 03.02.130, Prisoner/Parolee Grievances, is required to determine whether Burley's claims are exhausted.

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division . . . ." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is unsuccessful, the inmate must then submit a step I grievance form within five days. MDOC PD 03.02.130(v). "Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130(R).

If the grievance is accepted, the prison staff is required to respond in writing to a step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at step II or does not receive a step II response within fifteen days, he has ten business days to submit a step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The step III response concludes the administrative grievance process.

The state defendants correctly note that the relevant statute of limitation for § 1983 claims is three years, *i.e.* the same as for personal-injury torts under Michigan law. (Doc. 65 at 18, n. 3); *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). The statute of limitations for ADA claims is governed by the same state statute. *See Vandiver v. Corr. Med. Servs.*, No. 1:10 CV 41, 2011 WL 8971412, at *7 (W.D. Mich. Dec. 29, 2011), report and recommendation adopted. *See Fox v. Michigan Dep't of Corr.*, No. 08-CV-14410, 2010 WL 726517, at *3 (E.D. Mich. Feb. 24, 2010).

Burley's complaint can therefore state a viable claim only insofar as he has properly exhausted the relevant grievance, and the grievance was exhausted within the last three years. Grievances are defendant-specific, which is to say that a grievance is properly exhausted against a particular defendant only insofar as the grievance actually names that defendant. *See Pasley v. Maderi*, No. 13-13251, 2014 WL 5386914, at *4 (E.D. Mich. Sept. 15, 2014), aff'd (July 23, 2015) (finding that a prisoner's grievance was properly exhausted only against those prison officials actually named the complaint, and was not exhausted as to other prison officials who the prisoner alleged in his complaint were also involved in his maltreatment); *Bird v. Mansfield*,

9

No. 2:12-CV-238, 2013 WL 4782369, at *3 (W.D. Mich. Sept. 5, 2013) (recommending that summary judgment be entered in favor of a prison official who was not named at step I of the grievance process, but was named at steps II and III, because this did not constitute proper exhaustion); *Laster v. Pramstaller*, No. 5:08-CV-10898, 2011 WL 4506956, at *15 (E.D. Mich. Sept. 7, 2011) (concluding that a prisoner's grievance was not properly exhausted against a prison official who was first named at step II of the grievance process), report and recommendation adopted, No. 08-10898, 2011 WL 4505790 (E.D. Mich. Sept. 29, 2011).

Likewise, the grievance exhaustion process is issue-specific, such that exhausting a grievance regarding issue "1" does not permit the prisoner to tack on issues "2" and "3" once he reaches this Court. *See Baldridge-El v. Gundy*, 238 F.3d 419 (6th Cir. 2000) ("Baldridge-El did not attach proof that he exhausted his wheelchair grievance . . . and the other claims were not included in the grievances he filed. The district court properly dismissed these claims without prejudice.").

### b. Grievance Exhaustion Analysis

The state defendants assert that Burley properly exhausted ten hearing-impairment related grievances through step III of the grievance process since 2011[1], as shown by Burley' step III grievance report. (Doc. 65 at 3, Ex. 2). Three of those grievances (1135-28a, 0916-12z & 0882-12f) are time barred, having been exhausted more than three years prior to the filing of this complaint. Another grievance, 0770-03f, was not exhausted until after the complaint was filed, which makes it likewise untimely for review during this civil action. *See Morris v. Newberry*

---

[1] The choice of 2011 is arbitrary, and does not relate to the timeliness of Burley's claims. Burley's complaint was filed on February 25, 2016. (Doc. 1). Given the three year statute of limitations associated with Burley's personal injury and ADA claims, his grievances must have been exhausted no earlier than February 25, 2013.

*Corr. Facility*, No. 11-10938, 2013 WL 865540, at *3 (E.D. Mich. Feb. 11, 2013) ("[T]he PLRA requires that the grievance process be completed before the complaint is filed, those five grievances cannot be considered exhausted."), report and recommendation adopted, No. 11-CV-10938, 2013 WL 847520 (E.D. Mich. Mar. 7, 2013). The remaining six grievances are numbered 0059-07a, 0108-12i, 1431-12d, 3775-23z, 0896-24z, 0147-27b. (Doc. 65 at 3).

The state defendants assert that, of the remaining six exhausted grievances dealing with hearing impairment, "the only grievance against any of the individual State Defendants was 0059-07a, against Klatt . . . and the only other grievance which even referenced an individual State Defendant was 3775-23z, where Stoddard filed a Step II response." (Doc. 65 at PGID 325).

Burley, for his part, asserts that he has "properly exhausted over twenty-five . . . grievances relating to his profound hearing loss since 2012 through present." (Doc. 68 at 7). Burley challenges "that the record clearly belies" the state defendants' claim that he filed only ten grievances relating to hearing impairment since 2011. (*Id*.). In particular, Burley asserts that grievances MTU-11-09-0916-12z and DRF-12040-0882-012F were fully and properly exhausted. (*Id*. at 7-8). As noted above, both of these grievances were exhausted through step III more than three years ago, and thus are time barred by the statute of limitations. Burley points to no other properly exhausted and timely filed grievances, and review of the state defendants' attached grievance forms demonstrates that only six grievances were properly exhausted through step III and are still ripe for adjudication.

Burley's discussion of his grievances exposes a serious misunderstanding of the grievance exhaustion process. Burley alleges that he "initiated numerous grievance[s] challenging the conditions of his confinement." (Doc. 68 at 9). Burley then asserts that "[p]roper exhaustion

11

requires that a prisoner fairly bring to the administrations [sic] attention conditions of his/her confinement that he/she does not agree with." (*Id*. at 12). Burley argues that he satisfied Policy Directive 03.02.130 by "timely submitt[ing] his complaints to the various administrators at the prison which he was confined at," to which MDOC responded by "address[ing] the merits of [his] complaints." (*Id*.). Burley appears to be under the impression that "a merits determination is not required by the MDOC at all stages," and asserts that "[p]olicy does not require MDOC to do such an action in order to properly exhaust." (*Id*.).

Burley's recapitulation of the MDOC grievance policy bears some elements of truth and falsity. The Sixth Circuit has held that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). *Reed-Bey* established that where a prisoner "fail[s] to name a single individual in his initial grievance," and the MDOC nevertheless chooses to respond to the grievance on the merits rather than finding the claim defaulted under PD 03.02.130, the court will not find the grievance procedurally defaulted." *Id*. at 324.

Yet Burley is incorrect when he asserts that a prisoner properly exhausts his or her grievance merely by bringing an issue to the attention of the MDOC. As discussed above, 42 U.S.C. § 1997(e)(a) provides that prisoners may not bring suit in federal court regarding prison conditions unless and until "administrative remedies as are available are exhausted." Policy Directive 03.02.130 provides that prisoners must pursue their grievance through all three steps of the grievance process for their grievance to be properly exhausted. Burley does not exhaust his grievances by merely "bringing it to the attention" of the MDOC. Instead, he must receive a

merits-based decision at each step of the grievance process. *See Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013).

As discussed above, four of Burley's ten grievances filed after 2011 relating to hearing impairment are time barred. Of the remaining six grievances, only three reference any defendant discussed in Burley's complaint or amended complaint. Grievance 0059-07a references defendant Klatt; grievance 0108-12i references Holmes and the MDOC; and grievance 3775-23z references defendants Stoddard and Guilkie. Defendants MDOC, Klatt, Stoddard, and Holmes were each mentioned in Burley's original complaint. (Doc. 1). Defendant Guilkie is mentioned only in Burley's amended complaint. (Doc. 58).

### c.    Grievance 0059-07a - Klatt

The state defendants acknowledge that Burley's claims against defendant Klatt have been properly exhausted by way of grievance 0059-07a, and the state defendants do not request summary judgment on Burley's claim against Klatt. (Doc. 65 at 19-20). Burley's claims against Klatt are thus properly before this court.

### d.    Grievance 3775-23z – Stoddard and Guilkie

Grievance 3775-23z involves state-defendant Stoddard, but only insofar as Stoddard allegedly filed a step II response. (Doc. 65 at PGID 444). Attached documents relating to grievance 3775-23z show that Burley's step I grievance related to Resident Unit Manager ("RUM") Guilkie, who allegedly failed to provide Burley with a telecommunication device for the deaf ("TDD") in a timely manner. (*Id.* at PGID 445). In his grievance at step I, Burley grieves that "this institution," meaning the Ionia Correctional Facility ("ICF") prison, is "in violation of PD 05.03.130, 'Prisoner Telephone Use,'" that "RUM Gilkie [sic]" did not adequately respond

13

to Burley's request for a TDD phone, and that Burley consequently suffered a violation of his rights under the ADA and various other statutes and policies. (*Id*. at 446). Stoddard is not mentioned in Burley's grievance 3775-23z at step I. A handwritten note attached to Burley's step II grievance, apparently drafted by ARUS Snyder, indicates that "[t]his issue has been rectified and ICF now has access to a TDD hearing impaired phone." (*Id*.). In a letter to the Step II grievance coordinator, Burley asserts that Snyder's comment was "non-responsive to [his] grievance" because "the TDD phone is useless without the programming of the regular phone. ICF has a new TDD phone, but no access to the Relay Center (who transcribes the sender's messages). This service has been denied [to] me in violation of policy and the [ADA]." (*Id*. at PGID 448). At step III, a grievance specialist found that Burley's concerns were adequately addressed at steps I and II, and thus merited no further response. (*Id*. at 449).

Because Stoddard is not the subject of grievance 3775-23z, and because Burley did not exhaust any claims against Stoddard, he has no viable, exhausted claim against that defendant in this civil action. Moreover, a prison official's participation in the grievance process is insufficient to trigger liability under § 1983. *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) ("Prison officials are not liable under § 1983 for denying or failing to act on grievances.").

Burley's proposed amendment states that Guilkie was "involved in all aspects of denying [him] a reasonable accommodation" for his hearing disability, including "refus[ing] to equip the housing unit with emergency alarms" including "visual aids for fire alarms." (Doc. 58 at 3). Grievance 3775-23z bears no relation to emergency alarms; that grievance deals solely with Burley's allegation that the ICF prison did not have proper TDD facilities. (Doc. 65 at PGID

14

446). Burley cannot be permitted to tack on a claim which he did not properly exhaust. While Burley's proposed claim against Guilkie does not specifically mention TDD devices, the balance of his claim relates to the failure to provide "reasonable accommodation for [his] hearing disability," which allegedly caused Burley to "loose [sic] relationships by failing to assure [he] was reasonable accommodated with visual aids for [his] disability," which fairly implicates the use of TDD. (*Id*.). Burley's motion to amend will thus be granted insofar as he claims that Guilkie denied his request for TDD facilities in violation of Burley's rights. On the other hand, because 3775-23z was properly exhausted, and because Guilkie is the subject of that grievance, it is properly before the Court insofar as 3775-23z relates to Guilkie.

### e.    Grievance 0108-12i – MDOC and Holmes

The state defendants next argue that Burley's claims against the MDOC itself should be dismissed. At step I of grievance 0108-12i, Burley asserts that "[t]his grievance is against RUM Schad, Nurse Keller, Dr. Holmes, PA Fulsinger [sic], for violations of Title II of the ADA . . . ." (Doc. 65 at PGID 537). The MDOC was therefore not mentioned at step I of the grievance process. (*Id*.). In appealing the step I decision to step II, Burley asserted that "[t]he MDOC has a blanket policy of denying hearing impaired 2 hearing aids due to budget concerns," and that he "ha[s] been discriminated against by Dr. Holmes for [his] hearing impairment . . . ." (*Id*. at PGID 535). Burley's appeal of the step II decision does not appear to be part of the record, though a step III grievance report indicates that grievance 0108-12i was exhausted through step III, denied, and closed on May 14, 2014. (*Id*. at 366).

As noted above, grievances are defendant-specific and issue-specific, and thus properly exhaust claims regarding a particular defendant only insofar as the prisoner names that defendant

and explains their allegedly violative conduct at each of the three grievance steps. *See Pasley*, No. 13-13251, 2014 WL 5386914, at *4; *Bird*, No. 2:12-CV-238, 2013 WL 4782369; *Laster*, No. 5:08-CV-10898, 2011 WL 4506956, at *15. By naming MDOC at only step II of the grievance process, and failing to name MDOC at step I, Burley has failed to properly exhaust this claim against the MDOC. Burley therefore has no viable, properly exhausted claims against the MDOC. Regardless, since Congress has not abrogated Eleventh Amendment immunity by statute, nor did it do so under section 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and since the state of Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), I suggest that the claims against the MDOC should be dismissed even if they had been exhausted.

Holmes, a non-state defendant, has not moved to join in the state-defendants' motion for summary judgment. He therefore has not moved for dismissal on the ground of exhaustion, nor any other ground for that matter. The Court thus need not evaluate the merits of Burley's claims against him at this time, and declines to do so.

### ii.    ADA and RA Claims

To recapitulate, Burley has properly exhausted only two grievances relating to state defendants: grievance 3775-23z, which relates to Guilkie, and grievance 0059-07a, which relates to Klatt. The Court must therefore address the arguments for summary judgment raised in the state defendants' motion only with regard to these defendants. *Porter v. Nussie*, 534 U.S. 516, 524 (2002) (PLRA's exhaustion requirement is not limited to §1983 cases but applies to any action under federal law brought by a prisoner concerning prison conditions); *Pfeil v. Lampert*, 603 F. App'x 665, 671 (10th Cir. 2015); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061

(2007) ("we hold that the plain language of § 1997e(a) and relevant Supreme Court authority require prisoners bringing ADA and Rehabilitation Act claims to exhaust through available administrative remedies before filing suit.").

The state defendants argue that Burley has not stated a claim under either the American with Disabilities Act Title II, or the Rehabilitation Act § 504. (Doc. 65 at PGID 333). Dismissal for failure to state a claim would generally be raised under Federal Rule of Civil Procedure 12(b)(6) rather than Rule 56. Tellingly, the state defendants use the words "material fact" only once in their brief in support of their motion for summary judgment, and those words appear only in the "standard of review" section. (Doc. 65 at 13). The words "state a claim" appear six times. (*Id*. at 7, 8, 23, 25, 28, 30).

However, the state defendants do not argue that, even assuming the truth of Burley's statements, his claims fail as a matter of law. Instead, they argue that Burley has "failed to demonstrate any intentional discrimination," and that his "claim of severe hearing loss is undermined by the fact that he refused audio exams and was uncooperative, and the report of one audio exam he completed suggested that there was an 'exaggeration of hearing loss.'" (*Id*. at PGID 337-38). Thus, the state defendants in reality appear to be arguing that there is no genuine issue of material fact regarding whether Burley suffered a violation of the ADA, RA, or any other right.[2]

---

[2] Courts are obligated to dismiss a case filed *in forma pauperis* if, at any time, the court determines that the action fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(b). In this matter, the Court is not persuaded that Burley's complaint fails to state a claim, and thus declines to recommend dismissal *sua sponte*.

Despite their language to the contrary, the Court will address the state defendants' argument as one for summary judgment. This comports with the state defendants' request for summary judgment in the relief section of their brief. (*Id.* at PGID 348).

Burley alleges that his rights as a hearing disabled person were violated under the ADA and RA. The state defendants first argue that Burley's ADA and RA claims fail because he has failed to make out a prima facie claim of discrimination under those statutes. (Doc. 65 at 15-16).

To prove a violation of Title II of the ADA, the plaintiff must show: "[1] that he is a 'qualified individual with a disability,' [2] that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). Claims under the RA are very similar. The primary distinction between the ADA and RA is that the ADA prohibits discrimination "on the basis of disability" *see* 42 U.S.C. § 12112(a), whereas the RA prohibits exclusion from certain programs or activities only where the disability is the *sole* reason for the exclusion, *see* 29 U.S.C. § 794(a).

Where a plaintiff attempts to establish discrimination through indirect evidence, he must first "establish a prima facie case, followed by the familiar *McDonnell Douglas* burden-shifting." *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1104-05 (6th Cir. 2008). That is to say that the complainant must make an initial showing of conduct on the part of the defendant which appears, on its face, to suggest that discrimination was the motive behind that conduct. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. *Gribcheck v.*

*Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (quoting *McDonnell Douglas*, 411 U.S. at 802). The plaintiff must then demonstrate, by preponderance of the evidence, that the defendants' explanation for their conduct is a mere pretext for discrimination. *Id.*

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998). As applied to the prison context, a disabled prisoner states a claim under the ADA if he can show that he has been denied services that have been provided to other prisoners by reason of disability. *Rashad v. Doughty*, 4 Fed. Appx. 558 (10th Cir. 2001).

ADA claims are not viable against public officials in their personal capacity, and may be lodged only against either public officials in their official capacity, or against governments directly. *See Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009) ("Title II of the ADA does not, however, provide for suit against a public official in his individual capacity"); *Powell v. Morris*, 184 F.R.D. 591, 596 (S.D. Ohio 1998) ("There is no individual liability under the ADA"). In this case, Burley does not delineate whether he wishes to bring his ADA and RA claims against the defendants in their official or personal capacities. However, because his ADA claims could be viable only if lodged against the MDOC itself, or the defendants in their official capacities, the Court will assume that he wishes to bring suit against defendants in their official capacities.

Therefore, to set forth a prima facie claim of illicit discrimination under the ADA and RA, Burley must first demonstrate that he has a disability. The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having

19

such an impairment." 42 U.S.C. § 12102(2)(A)-(C). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The ADA thus explicitly provides that hearing difficulties can constitute a disability.

The state defendants assert that Burley exaggerated the extent of his hearing loss, as demonstrated by the results of a January 2011 hearing evaluation. (Doc. 65 at 4). Even assuming that Burley exaggerated his degree of hearing loss, however, it remains true that the MDOC granted Burley a Special Accommodation Notice such that he could possess a hearing aid (Doc. 65 at PGID 408), and made certain accessibility modifications to their facilities upon Burley's request, including placing a TDD phone in the Ionia Corrections Facility (*Id*. at PGID 444). These accommodations suggest that the MDOC recognizes that Burley suffers from hearing impairment, though it does not answer the question whether that impairment constitutes a disability under the ADA. However, it is clear at this juncture that there is a question of material fact as to whether Burley's hearing impairment is a disability for ADA purposes.

Second, Burley must demonstrate that he was "otherwise qualified" to participate in the programs or activities which he alleges he was denied on account of his hearing disability. Burley alleges that he was denied the ability to effectively participate in communications with family, disciplinary hearings, educational courses, religious services, and other prison programs because he was not appropriately provided with hearing-assistive devices. (Doc. 1 at 2-3, 16-17). The state defendants make no effort whatsoever to argue that Burley has not satisfied this element, thus it is unnecessary to address it in consideration of the state defendants' motion for summary judgment.

20

Third, Burley must establish that he was excluded from participation in certain programs or activities because of his hearing disability (or in the case of RA claims, solely because of his disability). The state defendants argue that Burley has not demonstrated the existence of any intentional discrimination whatsoever, much less discrimination motivated solely by his disability, and thus cannot sustain a claim under the ADA or RA. (Doc. 65 at 16). Defendants do not develop this argument by specific reference to Burley's grievances, but rather leave it to the Court to sort out whether Burley's grievances allege actions which might violate his rights under the ADA and RA. This halting effort is not sufficient to establish the lack of a genuine issue of material fact.[3]

While the state defendants correctly set forth the tripartite test used to determine liability under the ADA and RA, their application of the complex facts of this case to that standard spans only four sentences. In full, the state defendants argue that

> Here, Burley alleges discrimination, but he has failed to demonstrate any intentional discrimination by the State Defendants. A review of the grievances indicate that the MDOC processed Burley's requests consistent with its policy. Moreover, Burley's claim of severe hearing loss is undermined by the fact that he refused audio exams and was uncooperative, and the report of one audio exam he completed suggested that there was an "exaggeration of hearing loss." (Ex. 2 at 60, 178, 206.) On this record, Burley's ADA and RA claims against the State Defendants should be dismissed.

(Doc. 65 at 15-16). In other words, rather than applying the evidence provided in Burley's grievances to the ADA and RA standard, the state defendants ask the Court to sort through the

---

[3] "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quotation omitted). Summary judgment is only appropriate where the "movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

grievance files, crafting an argument on their behalf. The state defendants are not entitled to rely upon the Court to sift through the nearly 300 pages of exhibits in search for some piece of evidence which might demonstrate that Burley was not "otherwise qualified" to participate in prison programs, or that, insofar as he was excluded from prison activities and programs, his exclusion resulted from some motivation other than his disability.

Construing the evidence and all reasonable inferences in a light favorable to Burley, there is a question of material fact regarding whether Burley suffers from a hearing impairment which constitutes a disability under the ADA and RA. The state defendants made no argument that Burley was not otherwise qualified to participate in prison programs and activities, thus I find that a question of material fact exists on that issue. Finally, the state defendants have made only a halting, incomplete, and wholly insufficient argument that Burley was not excluded from certain programs and activities solely because of his hearing impairment. The state defendants have not demonstrated that there is no question of material fact as to whether Burley has set forth a prima facie claim under the ADA or RA, and are therefore not entitled to summary judgment on this score.

### iii.     Eleventh Amendment Immunity

The state defendants next argue that Burley's claims are barred by the doctrine of sovereign immunity, which grows out of the Eleventh Amendment to the United States Constitution. (Doc. 65 at 14-16). Specifically, they assert that "in order for Burley to state a valid ADA Title II claim against the MDOC to avoid the Eleventh Amendment immunity enjoyed by MDOC, he must first state a claim under Title II," and that he has failed to state such a claim. (Doc. 65 at 23).

The Eleventh Amendment bars suits against states and their departments, whether seeking monetary or injunctive relief, unless the state consented to being sued. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *Mingus v. Butler*, 591 F.3d 474, 481 (6th Cir. 2010) ("In addition to the states themselves, Eleventh Amendment immunity can also extend to departments and agencies of states") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984)). However, suits against state officials in their individual capacity are not barred by the Eleventh Amendment insofar as the relief sought is prospective injunctive relief rather than money damages. *See McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) ("However, the Eleventh Amendment does not preclude a suit against the Defendants–Appellees for prospective injunctive relief."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 89 (1984) (claims for prospective injunctive relief are not barred where the plaintiff challenges the constitutionality of the state official's behavior); *Imelmann v. Corizon Inc.*, No. 15-10343, 2016 WL 5402964, at *5 (E.D. Mich. Sept. 28, 2016). In the instant case, Plaintiff seeks compensatory and punitive damages as well as injunctive relief. (Doc. 1 at ID 39.)

Eleventh Amendment sovereign immunity can be waived by the state, or abrogated by congressional statute. *See Johnson, Jr. v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). No party has argued that the state of Michigan waived its sovereign immunity in this case, thus the only issue is whether Michigan's sovereign immunity was properly abrogated in the context of the ADA and RA.

In enacting the ADA, Congress "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment . . . ." 42 U.S.C. § 12101(b)(4). The ADA provides that "[a] State shall not be immune under the eleventh amendment to the

23

Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006). However, Congress may also prohibit conduct which does not actually violate the Fourteenth Amendment, because the power granted by that amendment "includes the authority both to remedy and to deter the violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 63 (2000). Congress possesses a "wide berth in devising appropriate remedial and preventative measures for unconstitutional actions," but its power under Section 5 of the Fourteenth Amendment is not unlimited and may not cause a "substantive change in the governing law." *Tennessee v. Lane*, 541 U.S. 509, 520 (2004) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997)).

The Supreme Court has set forth a three factor test to determine whether a claim under the ADA may proceed in the face of a sovereign immunity defense: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such conduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity in such contexts is nevertheless valid." *United States v. Georgia*, 546 U.S. at 152. In other words, the Court must first determine whether the state defendants' actions violated Burley's rights under the ADA. If not, the claim ought to be dismissed.

24

If those actions did violate Burley's rights under the ADA, the Court must then determine whether those actions also violated Burley's rights under the Fourteenth Amendment. Insofar as the state defendants' actions violated both the ADA and Burley's rights under the Fourteenth Amendment, his claims will not be barred by sovereign immunity, and may proceed.

Finally, if the state defendants' actions violated the ADA, but not the Fourteenth Amendment, the Court must determine whether Congress validly exercised its power to abrogate sovereign immunity premised on violations of a class of actions which are related to, but fall outside of, the ambit of the Fourteenth Amendment. This final piece of analysis requires application of the test announced in *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997), *i.e.* whether there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." As expressed in *Tennessee v. Lane*, 541 U.S. 509, 511 (2004), this test requires consideration of  (1) the scope of the constitutional right Congress sought to enforce when enacting Title II; (2) whether Congress identified a history and pattern of unconstitutional disability discrimination; and (3) whether the remedies created by Title II are congruent and proportional to the constitutional violation.

While the state defendants reference the Supreme Court's test, they do not analyze any of the three factors therein. (Doc. 65 at 14-15). Rather, the state defendants merely assert that Burley "has failed to demonstrate any intentional discrimination by the State Defendants." (*Id.* at 16). The state defendants have wholly failed to carry their burden in demonstrating that no question of material fact exists with regard to whether sovereign immunity bars Burley's suit against the state defendants. Indeed, the state defendants have not even deigned to identify which of the state defendants are cloaked with sovereign immunity.

Moreover, the state defendants have provided no support whatsoever for their assertion that Burley fails to state a claim under the ADA. Under these circumstances, it is appropriate to find, for the purposes of the instant motion for summary judgment, that Burley has raised a valid claim under Title II of the ADA.

Burley alleges that he experienced discrimination through the denial of certain necessary accommodations for his hearing impairment, resulting in the effective denial of his right to participate in calls with non-prisoners, disciplinary hearings, religious ceremonies, medical care, and other events and activities, and through intentional discrimination by the defendants against deaf persons. (Doc. 1 at PGID 2-3).

Burley has clearly set forth facts supporting his claim that he is a qualified individual with a disability, that he was denied the benefits of government programs or activities, and that he experienced this discrimination by reason of his disability; Burley has therefore set forth a violation of the ADA, 42 U.S.C. § 12132. The first prong of the *Georgia* test is satisfied.

Next, I must consider whether the ADA violations Burley alleges also violate the Fourteenth Amendment. In *Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808, 812-13, 818 (6th Cir. 2002), the Sixth Circuit determined on *en banc* review that Congress possessed the authority, under the Fourteenth Amendment, to prohibit irrational discriminatory conduct against disabled persons in violation of the Due Process Clause, but did not possess the authority to enforce a higher standard of review (*e.g.* strict scrutiny) because disabled persons are not a suspect class.

Another magistrate judge in this district recently applied the rule of *Popovich* and its progeny to a similar allegation of discrimination against prisoners in violation of Title II of the

ADA. In *McBride v. MDOC*, Magistrate Judge Grand noted that, insofar as a prisoner's Title II claim sounds in Due Process, or violation of Equal Protection rights by decisions lacking a rational basis, that claim abrogates Eleventh Amendment sovereign immunity. 15-1222, report and recommendation adopted by No. 15-11222, 2016 WL 1156740, at *1 (E.D. Mich. Mar. 24, 2016)). As in *McBride* and *Mingus*, Burley does not argue that he is entitled to heightened scrutiny due to his status as a disabled person. Instead, Burley asserts that he "has been denied the assistance and accommodation that [he] require[s] to effectively communicate and to participate in MDOC programs, services, and activities, in violation of the [ADA]" (Doc. 1 at PGID 1), and that he experienced discipline "for not following orders that he could not hear" (*Id.* at 3). These allegations strongly resemble those raised in *Popovich*, wherein a hearing-impaired plaintiff alleged that his Due Process rights were infringed by the denial of his right to meaningfully participate in a child custody hearing, *Popovich*, 276 F.3d at 813. The Sixth Circuit there determined that parents have a right to participate in hearings which impact their parental rights, thus the plaintiff's alleged inability to participate in such a hearing on account of his disability worked both a violation of the ADA and Due Process Clause. *Id.* at 813-14.

Prisoners likewise have a Due Process right to participate in disciplinary misconduct hearings, *Williams v. Williams*, No. 13-17284, 2016 WL 4537899, at *1 (9th Cir. Aug. 31, 2016), and may not be denied access to prison programs without some rational basis, *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992). As in *Popovich*, Burley's Fourteenth Amendment Due Process claim may proceed as a Title II ADA claim, because Congress validly exercised its authority to abrogate sovereign immunity in that context.

27

Burley also raises claims which more clearly sound in equal protection. He alleges that "[s]ome prison officers even single out deaf and hard of hearing inmates for unequal, abusive, and demeaning treatment due to their disability." (Doc. 1 at 3). In his response to the state defendants' motion for summary judgment, Burley asserts that he has "had officers and staff yell and scream at [him] when [he] did not hear them, and [has] been ridiculed and mocked on several occasions due to [his] hearing deficiency." (Doc. 68 at PGID 7). As in *Mingus*, Burley "does not claim to deserve heightened scrutiny as a member of a suspect class," but rather merely argues that deaf persons were singled out by the state defendants for irrational abuse on account of their disability. 591 F.3d at 483. Taking Burley's allegations of abuse as true, such unjustified, disparate treatment would clearly violate the Fourteenth Amendment right to equal protection, even when considered in the light of rational basis review.

Because Burley's ADA claims, if taken as true, also work a violation of the Fourteenth Amendment, the Court need not apply a congruence and proportionality analysis under *City of Boerne v. Flores*. Therefore, Eleventh Amendment immunity offers no relief to the state defendants.

### iv.    Lack of Personal Involvement

The state defendants next argue that Burley's complaint ought to be dismissed because he fails to allege that the state defendants were personally involved in the conduct alleged in his complaint. (Doc. 65 at 19). Complicating matters, the state defendants again appear to ignore the standard governing the motion which their brief supports (*i.e.* a motion for summary judgment under Rule 56), and instead imply that Burley has failed "[t]o state a claim under § 1983." (*Id.*

28

at 27). As noted above, the Court will address the state defendants' argument as one for summary judgment despite their use of language to the contrary.

The state defendants correctly note that a § 1983 claim can only be sustained where the defendant can be shown to have been personally involved in the allegedly unconstitutional conduct. *See Bennett v. Schroeder*, 99 F. App'x 707, 712 (6th Cir. 2004).

As discussed *supra*, Burley properly exhausted claims against only two state defendants, Klatt and Guilkie. The Court thus need only consider, for purposes of this motion for summary judgment, whether those defendants were personally involved in the allegedly violative conduct.

Burley alleges in grievance 0059-07a that Klatt denied him access to an interpreter during a misconduct hearing. (Doc. 65 at PGID 525). Burley's complaint is not a model of clarity, and likely would not pass muster if he was an attorney. But as a *pro se* filer and a prisoner, Burley's pleading is entitled to more liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed,") (quotation omitted). While he does not explicitly assert that Klatt denied him access to an interpreter in his complaint, he alleges in that document that "[d]eaf and hard of hearing inmates are subjected to disciplinary proceedings and parole hearings without effective communication," that "hard of hearing inmates may be punished even when they do not understand the charges against them . . . as a result of their disability," and that such inmates "are disciplined without complete knowledge of the claims against them or the length of their punishment." (Doc. 1 at PGID 18-19).

Reading Burley's grievance 0059-07a and his complaint in conjunction, Burley appears to assert that Klatt personally denied him access to an interpreter during a grievance hearing. The state defendants have not established that there is no issue of material fact regarding whether

Klatt participated in this alleged denial of Burley's rights under the ADA and Due Process Clause. Summary judgment due to lack of personal involvement would be inappropriate at this juncture.

As discussed *supra*, Burley has properly exhausted grievance 3775-23z against Guilkie only insofar as he alleges that Guilkie denied him access to TDD facilities. (Doc. 65 at PGID 446). Burley asserts that Guilkie was "involved in all aspects of denying [him] a reasonable accommodation" for his hearing disability in several ways, including by "not affording . . . reasonable accommodation for [Burley's] hearing disability" which resulted in Burley's "alien[ation] from [his] family and friends." (Doc. 58 at 3). Further, Burley asserts that Guilkie expressed a lack of concern with Burley's suffering because he "was in prison," and treated Burley disparately from "the African prisoners." (*Id.*). This is sufficient to demonstrate personal involvement.

Because Burley's amended complaint was filed after the state defendants' motion for summary judgment, their motion presents no arguments regarding Guilkie whatsoever. The state defendants have therefore not demonstrated that no question of material fact exists with regard to Guilkie's personal involvement in Burley's alleged maltreatment.

### v.    Qualified Immunity

Finally, the state defendants argue that they are entitled to summary judgment on the ground of qualified immunity because the contours of the rights which Burley alleges were violated were not sufficiently clear that a reasonable official would understand that his actions violated the same. (Doc. 65 at PGID 344-48). Further, the state defendants assert that:

> Here, Burley has failed to support his allegations with sufficient evidence. Burley alleges that the individual State Defendants discriminated against him because of

his disability. But the record demonstrates that the individual State Defendants were not objectively unreasonable in their actions. There is no reason to believe—apart from Burley's self-serving statements—that Burley had a severe hearing impairment, that the impairment was not being adequately accommodated, and that the individual State Defendants knew about the impairment and the inadequate accommodations. At all times, the individual State Defendants acted reasonably under the circumstances.

(Doc. 65 at PGID 347).

The Sixth Circuit applies a

> 'two-tiered inquiry' in reviewing the dismissal of a claim on qualified-immunity grounds. [*Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)] (quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)). "The first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." [*Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)] (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). "These two steps may be addressed in any order[,] [b]ut both must be answered in the affirmative" for the plaintiff's claim to proceed. *Id*. (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. 808). If either step is not satisfied, then qualified immunity shields the government officer from civil damages. *Id*.

*Courtright v. City of Battle Creek*, No. 15-1722, 2016 WL 5956725, at *2 (6th Cir. Oct. 14, 2016).

Once the defense of qualified immunity is properly raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### a. Klatt

As above, the only relevant defendants for purposes of this motion for summary judgment are Klatt and Guilkie. First, I must consider whether, considering the facts in the light most favorable to Burley, Klatt's alleged refusal to provide Burley with an interpreter during a

misconduct hearing violated Burley's Constitutional rights. Having already concluded that denial of the right to meaningfully participate in a misconduct hearing is a violation of a prisoner's Fourteenth Amendment Due Process rights, the first prong of the qualified immunity analysis must be answered in the affirmative.

Next, the Court must determine whether denying Burley an interpreter during a misconduct hearing was a clearly established constitutional violation such that a reasonable officer would have known it was a constitutional violation. Determining whether a right was clearly established at the time of the defendant's alleged action is a circuit-specific task. *See Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994) ("In inquiring whether a constitutional right is clearly established, this Court must look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits."); *Marsh v. Arn*, 937 F.2d 1056, 1069 (6th Cir. 1991) (the Sixth Circuit "places little or no value on the opinions of other circuits in determining whether a right is clearly established"); *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988) ("We should focus on whether, at the time defendants acted, the rights asserted were clearly established by decisions of the Supreme Court or the courts of this federal circuit.").

As noted by the Ninth Circuit in *Williams*, "[t]he Supreme Court's statement in 1974 that prisoners have a right to call witnesses and present evidence at disciplinary hearings necessarily implies a right to participate in the hearing process." *Williams*, No. 13-17284, 2016 WL 4537899, at *1. The Sixth Circuit has concluded that "[a]n inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment." *Thomas v. Van Ochten*, 47 F.3d 1170 (6th Cir. 1995). District courts in this circuit

have also found that denial of a prisoner's right to attend a misconduct hearing works a violation of the Fourteenth Amendment. *See Bannerman v. Hursh*, No. 2:05CV264, 2007 WL 80927, at *5 (W.D. Mich. Jan. 8, 2007) ("In this case, Plaintiff claims that he was deprived of his ability to attend his own hearing . . . . The alleged denial of this right deprived Plaintiff of the opportunity to convince an unbiased decision maker that he had been wrongly or falsely accused or that the evidence against him was false . . . . [T]here is a genuine issue of material fact regarding whether Defendant's conduct violated Plaintiff's due process rights."). A reasonable officer would have known on December 27, 2013 (Doc. 65 at PGID 525), that prisoners were entitled to attend and participate in their own misconduct hearings, and that denial of the same would constitute a violation of the Fourteenth Amendment. Further, a reasonable officer would have known that a prisoner incapable of understanding the misconduct hearing was effectively denied the ability to participate in that hearing. The second prong must also be answered in the affirmative. The court therefore ought to find that qualified immunity does not bar Burley's claims against Klatt.

### b.    Guilkie

Burley alleges that Guilkie failed to provide him with access to a TDD in a timely fashion. (Doc. 65 at PGID 445). I will first consider whether this alleged conduct violated Burley's Constitutional rights. Burley alleges that he informed Guilkie that the ICF institution lacked access to TDD on June 10, 2012, but that Guilkie refused to rectify this issue through at least November 2012. (*Id*.). On December 6, 2012, ARUS Snyder responded to Burley's grievance, noting that "this issue has been rectified and ICF now has access to a TDD hearing impaired phone." (*Id*.).

33

It is well established that prisoners "retain their First Amendment right to communicate with family and friends." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). This includes "reasonable access to the telephone," though said right is subject to "rational limitations in the face of legitimate security interests of the penal institution." *Id*. at 1100 (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). In the context of claims under the RA, one judge from this district noted that "[b]ecause Plaintiff is deaf he is considered to be a handicapped person within the meaning of the RA. The MDOC provides phone service to inmates. Therefore, as an inmate, Plaintiff was qualified to utilize that service." *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1047 (E.D. Mich. 2005).

There is no dispute that the MDOC provides phone service to inmates, and the state defendants have not asserted that Burley was ineligible for use of telephone facilities. Where the sole justification for a prisoner being effectively denied access to prison telephones is his hearing disability, and where a prison official refuses to provide a necessary accessibility tool, that prison official's action clearly violates the prisoner's rights under the Fourteenth Amendment. Such a denial would also work a violation of the First Amendment right to communicate with family and friends. These rights were clearly established by decisions within this circuit as of June 10, 2012, thus both prongs of the qualified immunity inquiry must be answered in the affirmative. Qualified immunity does not bar Burley's claims against Guilkie, either.

**D.     Conclusion**

To summarize, Burley's proposed amendment is futile insofar as he attempts to add new defendants against whom he has not properly exhausted grievances and filed within the relevant

34

statute of limitation. Consequently, Burley's motion to amend (Doc. 58) should be granted only as to Guilkie.

Burley has not properly exhausted grievances against any state defendant named in his complaint with the exception of Klatt. His claims against the MDOC, Heyns, Washington, Finco, Bridgford, Lafler, Smith, Stoddard, Prelesnik, Trieweiler, Birkett, Haas, Woods, Pelon, Koenigskencht, Stephenson, Knickerbocker, Verbonconer, Moore, and the John and Jane Doe defendants are therefore barred for failure to properly exhaust. Summary judgment should be granted as to these defendants.

The state defendants have not demonstrated that there is no material question of fact regarding whether Burley has stated a prima facie claim under the ADA.

The state defendants have not demonstrated that they are entitled to summary judgment on the ground of Eleventh Amendment immunity. The ADA validly abrogates state sovereign immunity in this case because the ADA violations which Burley alleges are coextensive with the Fourteenth Amendment.

The state defendants have not demonstrated that they are entitled to summary judgment on the ground of a lack of personal involvement. Burley has properly alleged that both Klatt and Guilkie were personally involved with his alleged maltreatment in his respective claims.

Finally, the state defendants have not demonstrated that they are entitled to summary judgment on the ground of qualified immunity. Burley's claims against Klatt and Guilkie both implicate rights which were clearly established in this circuit at the time of those defendants' alleged violative conduct. Construing all facts in favor of Burley, his allegations would amount to a violation of his Fourteenth Amendment rights.

Therefore, I recommend that:

- Burley's Motion to Amend **(Doc. 58)** be **GRANTED IN PART** insofar as he seeks to add Guilkie as a defendant, and **DENIED IN PART** as to all other newly named proposed defendants;

- The state defendants' Motion for Summary Judgment **(Doc. 65)** be **GRANTED IN PART** such that Burley's complaint be dismissed as against MDOC, Heyns, Washington, Finco, Bridgford, Lafler, Smith, Stoddard, Prelesnik, Trieweiler, Birkett, Haas, Woods, Pelon, Koenigskencht, Stephenson, Knickerbocker, Verbonconer, Moore, and the John and Jane Doe defendants, and **DENIED IN PART** as to defendants Klatt and Guilkie.

## III.   REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B), the following standard of review applies to the above recommendations: As provided for by Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). See also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); Howard v. Sec'y of Health & Human Servs., 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. Willis v. Sec'y of Health & Human Servs., 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 30, 2016                         S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Edward Burley 502426 at Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623.

Date: November 30, 2016                         By s/Kristen Castaneda
                                                Case Manager