**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EDWARD BURLEY,

    *Plaintiff,*

                      CIVIL ACTION NO. 2:16-cv-10712
                      DISTRICT JUDGE GEORGE CARAM STEEH
                      MAGISTRATE JUDGE PATRICIA T. MORRIS

    *v.*

MICHIGAN DEPARTMENT OF CORRECTIONS,
DANIEL HEYNS, HEIDI WASHINGTON,
THOMAS FINCO, JOANN BRIDGFORD,
BLAIN LAFLER, WILLIE SMITH,
CATHY STODDARD, JOHN PRELESNIK,
TRIEWEILER, THOMAS BIRKETT,
RANDALL HAAS, JEFFREY WOODS,
ROGER GERLACK, M. PELON, SHERRY,
J. QUIROGA, WILLIAMSON, J. KOENIGSKENCHT,
SCOTT HOLMES, STEPHENSON, KNICKERBOCKER,
R. KLATT, J. VERBONCONER, JOHN DOE,
and STEPHEN MOORE,

    *Defendants.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Doc. 79)**

**I.    RECOMMENDATION**

    For the reasons set forth below, **IT IS RECOMMENDED** that Burley's Motion for

Preliminary Injunction, (Doc. 79), be **DENIED**.

**II.     REPORT**

    **A.     Introduction**

On February 25, 2016, Plaintiff Edward Burley filed the instant complaint against the Michigan Department of Corrections ("MDOC"), Daniel Heyns, Heidi Washington, Thomas Finco, Joanne Bridgford, Blaine Lafler, Willie Smith, Cathy Stoddard, John Prelesnik, Patrick Trieweiler, Thomas Birkett, Randall Haas, Jeffrey Woods, Michelle Pelon, Jacque Koenigskencht, George Stephenson, Joseph Knickerbocker, Russell Klatt, James Verbonconer, Stephen Moore, Sherry, Roger Gerlack, and Scott Holmes, along with certain Jane and John Doe defendants. (Doc. 1). On April 15, 2016, District Judge Steeh referred all pretrial matters in this case to the undersigned Magistrate Judge. (Doc. 8).

In his pleadings, Burley alleges that he suffers from a hearing impairment, and that Defendants have failed to provide him with accommodations for his disability, including access to interpreters, videophones, amplifiers, hearing aids, and certain other audio-visual equipment which would permit him to more fully participate in academic classes, training, medical care, disciplinary hearings, religious ceremonies, and family visits, and have placed him at risk in case of an emergency, whereby warnings are conveyed using audio cues. (Doc. 1 at 2-3). Further, Burley asserts that Defendants sometimes single out hearing impaired inmates for abusive or disparate treatment. (*Id.* at 3, 19-20). Burley alleges that Defendants have thereby denied his rights First Amendment and Fourteenth Amendment, and have violated the Americans with Disabilities Act ("ADA") 42 U.S.C § 12101 *et seq.*, and the Rehabilitation Act 29 U.S.C. § 794 *et seq.* (*Id.* at 9-39).

On November 30, 2016, I issued a Report and Recommendation ("R&R") urging District Judge Steeh to dismiss this case as to the MDOC, Heyns, Washington, Finco, Bridgford, Lafler, Smith, Stoddard, Prelesnik, Trierweiler, Birkett, Haas, Woods, Pelon, Koenigskencht, Stephenson, Knickerbocker, Verbonconer, Moore, and the John and Jane Doe defendants, (Doc. 76), to which Burley filed objections on December 14, 2016 and January 3, 2017, (Docs. 77, 82). The R&R currently awaits Judge Steeh's consideration.

On December 28, 2016, Burley filed the instant Motion for Preliminary Injunction. (Doc. 79). Thereafter, on January 18, 2017, Gerlack, Holmes, Sherry ("Group 1 Defendants")—and Birkett, Joann Bridgford, Finco, Haas, Heyns, Klatt, Knickerbocker, Koenigskencht, Lafler, MDOC, Moore, Pelon, Prelesnik, Smith, Stephenson, Stoddard, Trieweiler, Verbonconer, Washington, and Woods ("Group 2 Defendants")—filed responses to Burley's Motion, (Docs. 86, 89), and Burley replied on February 2 and 13, 2017. (Docs. 93-94).

### B.    Motion for Preliminary Injunction

Burley moves for the issuance of a preliminary injunction "to afford plaintiff reasonable accommodations consistent with" his hearing disability. (Doc. 79 at 7). He does not expressly indicate what "reasonable accommodations" ought to be made if granted injunctive relief, but his language implies two: (1) access to an interpreter for medical appointments, hearings, and religious services, among other things, (Doc. 79 at 4); and (2) two hearing aids, rather than just one, (Doc. 79 at 4, 6).

At the outset, I note that courts have long held that injunctive relief is not appropriate where, as here, Plaintiff seeks an injunction that merely instructs a party to "obey the

3

law[.]" *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that an injunction which prohibited municipality from discriminating on the basis of race would do "no more than instruct the defendant to 'obey the law,'" and therefore was invalid); *Equal Emp't Oppor. Comm'n v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) ("'[s]uch "obey the law" injunctions cannot be sustained'") (quoting *Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895, 897-98 (5th Cir. 1978)). Therefore, I suggest the request could be denied on this ground alone.

If the standards governing injunctive relief are examined, the result is the same. When considering whether to issue preliminary injunctive relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). Because a preliminary injunction is "an extraordinary remedy," the movant must make a far more stringent showing of proof than that required to survive summary judgment. *Winger v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Farnsworth v. Nationstar Mortgage, LLC*, 569 F. App'x 421, 425 (6th Cir. 2014). "Although no one factor is controlling," a movant who cannot demonstrate likelihood of success on the merits typically cannot attain preliminary relief. *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). "[W]here a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison

setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014).

### 1. Likelihood of Success on the Merits

The claims in Burley's complaint flow from two separate but entwined fonts: (1) federal disability statutes—or the RA and ADA—and (2) the Constitution—or the First and Fourteenth Amendments. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA contains nearly identical language, except that it prohibits exclusion from certain programs or activities only where the disability is the *sole* reason for the exclusion. *See* 29 U.S.C. 794(a). Of note, these claims have no likelihood of success against any individual defendant—which is every defendant except the MDOC—because neither statute imposes liability upon individuals. *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Lee may not maintain an action under the ADA or the RA against the individual defendants identified in his complaint because neither the ADA nor the RA impose liability upon individuals.") (citing 29 U.S.C. § 794(b) and 42 U.S.C. § 12131(1)).

Burley's constitutional claims, by contrast, implicate all named defendants. The Supreme Court assures that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (internal citations omitted). Such rights,

however, "may be subjected to reasonable restrictions and limitations," *Joseph v. Campbell*, 10 F. App'x 264, 266 (6th Cir. 2001).

With respect to these claims, Burley posits that the strength of his evidence thus far justifies preliminary relief. In particular, evidence of "indiscriminate[] harass[ment], non-accommodations for a serious medical condition (profound hearing loss), deni[al] [of] an interpreter for medical consultations, disciplinary hearings, educational and self-help programs, crisis counseling, classification, and other critical functions in the MDOC necessitating an interpreter" shows that he has "been denied reasonable accommodations for [his] disability." (Doc. 79 at 2). He also suggests that my R&R, (Doc. 76), "is riddled with findings of fact that clearly demonstrate a strong likelihood [of success], as well as the complaint, the documented medical records, accommodation orders, and other affidavits currently before this Court." (Doc. 79 at 3). To this, each group of defendants offers a discrete riposte deserving independent discussion.

### i.     Group 1 Defendants

Group 1 Defendants simply maintain that Burley furnishes no evidence in support of his motion, and that the actual record evidence "demonstrate[s] that [Burley] has effectively accessed religious services, extensive healthcare, and obtained a legal education which he uses to work with other inmates," among other things. (Doc. 86 at ID 903). This, they suggest, belies the proclaimed strength of Burley's claims.

As a preliminary matter, and as mentioned above, Group 1 Defendants are all individuals, and thus need worry only about Burley's constitutional claims. Moreover, no Group 1 Defendants were involved in denying Burley access to an interpreter, and therefore

6

Burley cannot demonstrate a likelihood of success on such grounds against them. *E.g. Herrerra v. Michigan Dept. of Corrections*, 2011 WL 3862640, at *9 (E.D. Mich. July 22, 2011) ("[I]n order to state a claim under § 1983 '[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant.'") (quoting *Barren v. Harrington*, 152 F.3d 1193,o 1194 (9th Cir. 1998) (per curiam)). Therefore, Burley's likelihood of success against Group 1 Defendants rests on the nature of their involvement in denying him the additional hearing aid he seeks.

Burley submits no evidence, however, to support his arguments on this count, and the medical evidence on file proves somewhat equivocal on the issue of exactly how severe one might consider his condition. Some evidence certainly tends to show that Burley suffers from hearing loss, and that he requires the accommodations he seeks. *See, e.g.*, (Doc. 88, Ex. A at ID 939) ("Amplification is recommended bilaterally."); (*id.* at ID 966) ("[I] then placed a very sensitive . . . stethoscope in his ears and spoke LOUDLY (behind a closed hand) and he DID NOT EVEN FLINCH."); (*id.* at ID 958) ("[Officers] admit that [Burley] will generally not hear the loudspeaker when called . . . and will not hear when he is otherwise being called unless they gain eye contact (in order for him to read lips). They report no inconsistencies with these findings and that he is also always seen [with his] hearing aide on."). Other evidence, however, implies that his allegations are largely apocryphal, and that he has participated fully in a variety of activities without difficulty or need for further accommodation. (Doc. 88, Ex. A at ID 946) ("Edward Burley was seen . . . to confirm or deny suspicions of exaggerating hearing loss. Mr. Burley stated today that

7

he is refusing this test. No testing performed today."); (*id.* at ID 953) (relaying that an audiology report reached "results suspicious of exaggeration of hearing loss") (internal quotation marks omitted); (*id.* at ID 1030) ("[Burley] reports involvement with exercise, law library, Jewish services. He reports being able to relax with his cellmate and while in the Jewish service. He states he continues to have support of his girlfriend, Mom, Dad and sister."); (*id.* at ID 1050) ("[Burley] reports having had two years of law school and successful completion of paralegal certification; he states that he is often very busy doing 'legal work' for other prisoners as well as himself, . . . . His speech is coherent, organized and normal in volume . . . .").

Even generously construed, Burley's complaint, this Motion, and the evidence of record do not present a strong likelihood of success on the merits against the Group 1 Defendants.

### ii. Group 2 Defendants

Group 2 Defendants, on the other hand, correctly note that my R&R in fact "recommends that Burley's claims should be limited to those that he has exhausted: Defendant Klatt's failure to give Burley an interpreter for a misconduct hearing (grievance DRF-14-01-0059-07a), and Defendant Guilkie's failure to provide Burley with a telecommunication device (TDD) in a timely manner (grievance ICF-12-11-3775-23z)." (Doc. 89 at 3-4). In this sense, "the R&R does not stand for the proposition that Burley is *likely* to succeed on the merits of his [Americans with Disabilities Act] and [Rehabilitation Act] claims, only that the facts as Burley alleges meet the" requisite elements. (Doc. 89 at 4).

8

Once again, I reiterate that Burley's claims under the ADA and RA retain no likelihood of success as against any individual defendants. Additionally, I previously recommended dismissing Burley's complaint against the MDOC, Heyns, Washington, Finco, Bridgford, Lafler, Smith, Stoddard, Prelesnik, Trierweiler, Birkett, Haas, Woods, Pelon, Koenigskencht, Stephenson, Knickerbocker, Verbonconer, Moore, and the John and Jane Doe defendants, for failure to exhaust administrative remedies. (Doc. 76). As such, I rank the likelihood of success against these defendants extremely low. To the extent Burley retains a capacity to prevail against Guilkie on constitutional grounds, it is irrelevant in the context of the present Motion, for Guilkie's colorable violation involves interfering with Burley's access to a TDD, not an interpreter or an additional hearing aid. *See Herrerra*, 2011 WL 3862640, at *9. For this reason, Burley only retains a likelihood of success on constitutional grounds against Klatt.

With respect to Klatt, however, Burley has not provided sufficient evidence that he will succeed. As discussed above, Burley submits no evidence to support this Motion, and alleges merely that he "would like to attend [services] but sometimes has difficulty understanding without an interpreter." (Doc. 1 at 17). In fact the record evidence shows that he regularly attends Jewish services, and that a single hearing aid may suffice to accommodate his impairment. (Doc. 88, Ex. A at ID 1030). For these reasons, Burley's likelihood of success against Klatt, though not nil, remains low.

For these reasons, Burley cannot demonstrate a substantial likelihood of success on his claims, which advises against granting relief.[1]

### 2. Irreparable Injury

Among the injuries Burley fears are "anxiety attacks (which crisis counselors [attribute] to exacer[b]ated anxiety and distress contributable to lack of accommodation in medical care)," "nightmares," "anxiety episodes," "depression," and "other emotional injuries . . . ." (Doc. 79 at 4). He also writes of "obvious harms and dangers in prison" as "he can't hear from behind him, nor can he hear any potential attacker." (Doc. 79 at 4, 6). In his words, "Plaintiff has already been stabbed from an attacker because he could not hear the prisoner coming from behind." (Doc. 79 at 6). Group 2 Defendants, in response, observe that "insofar as the R&R recommends that any claims proceed, these claims concern the past conduct of two individuals and . . . not the current or future application of [MDOC] policies to Burley or any other prisoners." (Doc. 89 at 5). "Simply stated, the

---

[1] Burley further urges this Court to find that Defendants "stated in depositions in the [*McBride*] case that they don't recognize hearing impaired prisoners as having a disability," and that such admissions should operate against them in this context. (*Id.*). This Court may take judicial notice of "a fact that is not subject to reasonable dispute" if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes the existence of statements in a deposition from a prior case. *Cf. David v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) (refusing to take judicial notice of deposition transcripts because "it is not the existence of these documents that [the plaintiff] seeks for us to acknowledge," but "the substantive facts within those exhibits, many of which are disputed, to support his appeal," and thus to improperly supplement the record on appeal). I decline, however, to comb those depositions in search of evidence which might assist Burley in making a successful argument. *See Gerrior v. Stoddard*, No. 14-11313, 2014 WL 4284649, at *2 (E.D. Mich. Aug. 29, 2014) ("[F]ederal district courts may not 'assume the role of advocate for the pro se litigant,' . . ." (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991))). And in any case, even assuming Burley could prove that such depositions demonstrated conclusively that Defendants did not consider him disabled—which seems unlikely, considering the fact that they provided him with a hearing aids and repaired them consistently, *e.g.*, (Doc. 88, Ex. A at ID 1055)—the dearth of evidence in Burley's favor would preclude a finding that he held a substantial likelihood of success on his claims.

alleged unconstitutional conduct already occurred and ended, and there is no current or future conduct to be enjoined." (*Id.*). To this, Group 1 Defendants add that even if Burley faced possible future injury, "there is no evidence in the record that" such injury "cannot be repaired." (Doc. 86 at ID 907).

To the extent that Group 2 Defendants suggest that alleged past exclusion from religious (and other) activities is only a past harm, they are mistaken. Taken at face value, Burley's allegations would indicate that he was *and continues to be* denied accommodations necessary for the exercise of his First Amendment rights. *Cf. Elrod v. Burns*, 427 U.S. 347, 374-75 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief." (internal citations omitted)). I assume, for the purposes of this Motion, that Defendants could resume their alleged practice of denying accommodations to Burley, resulting in future harm.

Nevertheless, the fears Burley cites lack the concreteness necessary for a finding in his favor on this count. His medical records disclose, at best, a weak nexus between his mental impairments and the absence of his requested accommodations. *E.g.*, (Doc. 88, Ex. A at ID 1002) ("Inmate reports . . . that since going to segregation and awaiting long-term protection, his worry and anxiety has been heightened."). They certainly do not contain evidence suggesting that any harm he might suffer therefrom would prove irreparable. *E.g.*,

11

(Doc. 88, Ex. A at ID 1024, 1030, 1051) (denying suicidal and homicidal ideation). And the fear that he cannot protect himself from potential attacks remains far too speculative to entertain seriously. Indeed, though he described "anxiety related to 'being stabbed in October 2014'" at an appointment in April 2015, (Doc. 88, Ex. A at ID 1016)—and complained of fearing physical attacks at numerous other points in the record, *e.g.*, (Doc. 88, Ex. A at ID 968); (*id.* at 1004); (*id.* at 1023)—no medical records indicate he ever received treatment for a stab wound, or any other dangerous incident. And even so, nothing aside from his bald assertion indicates that his professed fears will be validated in the future. *See* 11A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil 2d § 2948 at 153-56 (West 1995) ("Speculative injury is not sufficient," and "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown"); *cf. Laster v. Pramstaller*, 2009 WL 497407, at *2 (E.D. Mich. Feb. 24, 2009) ("[I]njunctive relief should not issue where the claimed irreparable damage is speculative or may never occur. This Court has no idea whether, why or when Plaintiff will receive tickets or other discipline within the prison system.").

Burley does not expressly argue that the potential violation of his First Amendment rights would work irreparable harm on him, but I address this nonetheless, because where a claim "is based upon a violation of the plaintiff's constitutional rights," a plaintiff generally "can demonstrate that a denial of an injunction will cause irreparable harm . . . ." *Overstreet v. Lexington-Fayett Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002). As discussed above at some length, however, Burley's likelihood of success as to

his constitutional claims remains low because he has not furnished sufficient evidence that his hearing impairment is truly severe enough to warrant assistance from an interpreter, and thus that he *actually* suffered (or will suffer) any constitutional injury. Due to this defect, no presumption of irreparable harm will attach to Burley's constitutional allegations. *Accord, e.g.*, *Overstreet*, 305 F.3d at 578 ("The Court has already discussed the fact that it is unlikely that Mr. Overstreet will be able to demonstrate that he has a cognizable constitutional claim. Thus, his argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit."); *Dulak v. Corizon Inc.*, No. 14-10193, 2014 WL 4678085, at *6 (E.D. Mich. June 9, 2014).

Having considered these factors, I suggest that the evidence of record does not show that Burley would suffer irreparable harm absent injunctive relief.

### 3. Substantial Harm to Others

Burley contends that the injunction he requests will "[o]bviously" not cause "any type of harm or injury to a third party." (Doc. 79 at 5). Group 2 Defendants note, however, that granting the injunction would cause them to "expend limited public resources to comply," and that this in itself harms others. (Doc. 89 at 6).

The record shows that Burley was provided a hearing aid already, and Burley has not provided evidence demonstrating entitlement to an interpreter or an additional hearing aid. *Cf. Cox v. Correctional Medical Services, Inc.*, 2006 WL 3147733, at *4 (E.D. Mich. Oct. 25., 2006) (reaching the opposite conclusion where the prisoner demonstrated that the defendants would "likely" have to "furnish some" of the plaintiff's requested accommodations). This factor therefore militates slightly against Burley's requested relief.

13

### 4. Public Interest

In pitching this final prong, Burley simply says society will "be best served by assuring that plaintiff is properly accommodated in religious group meetings, medical consults, or any other educational program offered to other prisoners that plaintiff may elect to participate in," and that "[b]y issuing a preliminary injunction in this matter," the Court can assure that "all persons, even those incarcerated, are properly accommodated and not discriminated against." (Doc. 79 at 5-6). Group 1 Defendants, however, offer the alternative view that "leav[ing] the administration of state prisons to state prison administrators" is in the public interest, particularly when "[a]ccommodations for [Burley] will not benefit others." (Doc. 86 at ID 907). Both parties make legitimate arguments. Although state prisons must comply with the ADA and may not erode prisoners' First Amendment rights, courts likewise should desist from interfering with the prison system's operation absent a stronger evidentiary showing than that before this Court. *Cf. Carter v. Michigan Dept. of Corrections*, 2013 WL 5291567, at *6 (E.D. Mich. Sept. 19, 2013) ("Although nothing in the record suggests that granting a preliminary injunction would cause substantial harm to others, the Court must be mindful of the cautions that apply to issuing an injunction that affects the operation of the prison system, which also shows that the public interest would not be served by issuing the injunction.").

Viewed holistically, none of the factors addressed above weigh sufficiently in Burley's favor. The Court should therefore reject Burley's requested relief.

### C. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Burley's Motion for Preliminary Injunction, (Doc. 79), be **DENIED**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 24, 2017  S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Edward Burley #502426 at Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

Date: February 24, 2017  By s/Kristen Castaneda
Case Manager