## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EDWARD BURLEY,

       *Plaintiff*,

*v.*

J. QUIROGA, WILLIAMSON,
R. KLATT, and HAROLD GILKEY,

       *Defendants*.

_____/

CASE NO. 16-cv-10712

DISTRICT JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON DEFENDANTS KLATT AND GILKEY'S MOTION FOR SUMMARY JUDGMENT (R. 148)

Plaintiff Edward Burley, a Michigan Department of Corrections (MDOC) inmate with a hearing impairment, alleges that Defendants violated a host of constitutional and statutory provisions. (R. 1.) The present Report addresses a motion for summary judgment filed by Defendants Russell Klatt and Harold Gilkey. (R. 148.) For the reasons below, I recommend that the Court **DENY** Defendants' motion.

## II.   REPORT

### A.   Facts and Procedural History[1]

While incarcerated in 2006, Plaintiff received a hearing aid. (R. 130-6, PageID.1397, 1404.) According to a medical note from August 2009, hearing evaluation

---

[1] The facts have been recounted across multiple Reports and Orders, and I will not belabor them. Instead, this section provides background on Plaintiff's hearing impairment and the case's procedural history. The specific allegations against the present two Defendants, Klatt and Gilkey, will be addressed in the analysis below.

and speech testing revealed hearing loss, characterized variously as profound or moderate to severe. (R. 153, PageID.2109.) Other evidence also could suggest hearing loss. (R. 88, PageID.939 ("Amplification is recommended bilaterally.")); (R. 88, PageID.958 ("[Officers] admit that [Burley] will generally not hear the loudspeaker when called . . . and will not hear when he is otherwise being called unless they gain eye contact (in order for him to read lips). They report no inconsistencies with these findings and that he is also always seen [with his] hearing aide [*sic*] on.")); (R. 88, PageID.959 ("During today's visit [Plaintiff] displays difficulty hearing normal conversation and appears that he is lip reading. When speaking to [Plaintiff] without him looking directly at me he doesn't acknowledge hearing me."); (R. 88, PageID.966 ("I then placed a very sensitive . . . stethoscope in his ears and spoke LOUDLY (behind a closed hand) and he DID NOT EVEN FLINCH.")).

A 2011 report mentions suspicions that Plaintiff exaggerated his hearing loss. (R. 153, PageID.2278, 2300); *see also* (R. 153, PageID.2315 (medical report form stating, "Reviewed documents today which state 'responses appear to be suprathreshold'. Called and spoke with audiologists to clarify and was informed impression is that patient is suspected to have exaggerated his responses as his acoustic reflexes are present at normal levels and this is not consistent with profound hearing loss which is what he is demonstrating")). Other records indicate that Plaintiff's hearing aid functioned properly and allowed him functional hearing. *See* (R. 88, PageID.961 ("Based on acoustic reflex findings . . . it was felt that his current hearing aid was appropriate at that time [*i.e.*, in January 2011].")); (R. 88, PageID.966 ("[C]urrent [hearing aid] device IS WORKING per

audiology [in November 2011]. . . . [H]e can hear my relatively deep voice seemingly well though I spoke more loudly than [normal].")); (R. 88, PageID.974 ("[Plaintiff] able to hear my voice for the most part and is wearing his hearing aid.").) In November 2011, one doctor was "inclined to believe he probably does have profound S-N hearing loss approaching deafness." (R. 88, PageID.966.) The problem, the doctor concluded, was that "we need to (or should have) proof positive objective evidence to PROPERLY accomadate [*sic*] his special needs[.]" (*Id.*)

The following year, on January 2, 2012, Plaintiff refused offsite testing that would "confirm or deny suspicions of exaggerating hearing loss." (R. 153, PageID.2098.) He feared that the testing, which required placing wires on his head, would trigger migraines. (R. 130-6, PageID.1403; R. 153, PageID.2349.)

Nonetheless, that same year, he was granted a "special accommodation" to use a telecommunications device for the deaf (TDD) for telephone conversations. (R. 130-5, PageID.1352; R. 139, PageID1636-1637.)[2] A special accommodation allows an inmate to use assistive devices when he or she has "a medical condition which restricts his/her ability to function adequately in the institutional environment." MDOC PD 04.06.160(E) (eff. June 30, 2008). The accommodation can be cancelled after a medical practitioner examines the inmate. *Id.* PD 04.06.160(K).

---

[2] "A teletypewriter ('TTY'), also known as a telecommunication device for the deaf ('TDD'), is a telephone equipped with a keyboard and a display screen. TTY devices enable hearing impaired individuals to communicate over telephone lines by sending and receiving typed messages." *Holmes v. Godinez*, 311 F.R.D. 177, 196 (N.D. Ill. 2015).

Plaintiff filed the present lawsuit on February 25, 2016, alleging various claims against MDOC, a cadre of state officials and employees, and a few "non-state" defendants. (R. 1.) Shortly after, all pretrial matters were referred to me. (R. 8.) Many defendants have since been dismissed from the case. (R. 76, 99, 162.) On June 30, 2016, Plaintiff filed a motion to amend his complaint, (R. 65), which the Court later granted in part, permitting the additional allegations Plaintiff sought to levy against Gilkey. (R. 65.)

Klatt and Gilkey now move for summary judgment. (R. 148.) Briefing is complete and the matter is ready for resolution.

### B.  Analysis

#### 1.  Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his or her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D.N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### 2. Defendant Klatt

Klatt's motion focuses only on Plaintiff's claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, (RA), 29 U.S.C. § 701, *et seq.* (R. 148, PageID.1955.)

### a. Legal Background

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA applies a nearly identical prohibition to entities receiving federal funds: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "Other than [RA §] 504's limitation to denials of benefits 'solely' by reasons of disability and its applicability only to entities that receive federal funds, 'the reach and requirements of both statutes are precisely the same.'" *McBride v. Mich. Dep't of Corrections*, 294 F. Supp. 3d 695, 704 (E.D. Mich. 2018) (quoting *S.S. v. Eastern. Kentucky Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008)).[3]

---

[3] The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998).

Because "neither of these differences [is] at issue" in this case, the ADA Title II and RA § 504 claims will be addressed as one. *Id.*[4]

As for the showings required in ADA and RA claims, the parties do not appear to agree on the appropriate framework, but neither do they address their disagreement. Klatt's brief launches into an intentional-discrimination analysis, focusing on the elements associated with that framework. (R. 148, PageID.1955.) For his part, Plaintiff cites out-of-circuit caselaw holding that discrimination under ADA Title II can be established "in one of three ways: (1) intentional discrimination (disparate treatment); (2) disparate impact; or (3) failure to make a reasonable accommodation." (R. 154, PageID.4002 (citing *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).) He opts for the reasonable accommodation route. But this leads to more questions as to whether, and how, a reasonable-accommodation claim can be brought in this Circuit.

While the Sixth Circuit "has distinguished intentional discrimination claims from disparate-impact and reasonable-accommodation claims," it remains "unclear 'whether a reasonable-accommodation claim under Title II is a viable claim separate from a disparate-treatment or disparate-impact type claim[.]'" *United States Soc'y for Augmentative & Alternative Comm'n, Inc. v. Lyon*, No. 15-cv-13065, 2016 WL 6563422, at *2 (E.D. Mich. Nov. 4, 2016) (quoting *Everson v. Leis*, 412 F. App'x 771, 784 n. 6 (6th Cir. 2011) (Moore,

---

[4] As noted in my prior report, "ADA claims are not viable against public officials in their personal capacity, and may be lodged only against either public officials in their official capacity, or against governments directly." *Burley v. Mich. Dep't of Corrections*, No. 16-cv-10712, 2016 WL 11259277, at *9 (E.D. Mich. Nov. 30, 2016), Rep. & Rec. adopted by 2017 WL 877219 (E.D. Mich. Mar. 6, 2017). Consequently, although Burley "does not delineate whether he wishes to bring his ADA and RA claims against the defendants in their official or personal capacities," I "will assume that he wishes to bring suit against defendants in their official capacities." *Id.*

J., dissenting)).) Other circuits do distinguish the claims, at least to the extent they recognize each as a separate basis for liability. *See, e.g.*, *Wisconsin Comm. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) ("[A]s our cases already hold, failure to accommodate is an *independent* basis for liability under the ADA."). In the Second Circuit, which recognizes the distinction, the reasonable-access analysis is not all that different from our intentional-discrimination analysis: the prima facie claim under both the ADA and the RA requires a showing that (1) the plaintiff was a qualified individual with a disability, (2) who was discriminated against (3) because of his or her disability. *Fulton*, 591 F.3d at 43. The refusal to provide a "reasonable accommodation" is simply one of the ways the entity can discriminate. *Id.*

The Second Circuit's approach likely reflects what the Sixth Circuit would do if presented with this issue—acknowledge the distinction between the frameworks but find the required elements to be similar, if not identical. In dealing with a different issue, the Sixth Circuit has broadly stated that "Title II does more than prohibit public entities from intentionally discriminating against disabled individuals. It also requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004). The court discerned this "mandate" in 42 U.S.C. § 12132's provision that individuals cannot "be denied the benefits" of an entity's programs. *Id.* at 909-10; *see also Rose v. Wayne Cty. Airport Auth.*, 210 F. Supp. 3d 870, 890 (E.D. Mich. 2016) (finding that Title II required public entities

to make reasonable accommodations). Specific elements for such a claim were not discussed.

But in a subsequent case, the Sixth Circuit sketched the framework for a reasonable accommodations claim (again, however, without specifically addressing whether such a claim involved different elements). *Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008), *overruled in part by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n. 1 (6th Cir. 2015).[5] To bring a discrimination claim under the ADA or RA, "a plaintiff must prove that: '(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program . . . because of her disability.'" *Id.* at 532 (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir.2005)). The plaintiff also "must show that the discrimination was *intentionally* directed toward him or her in particular." *Id.* Once these elements have been established, "the burden shifts to the defendant to show that the *accommodation* provided was either effective, or that the accommodation sought and not provided would have resulted in a fundamental alteration of the procedures or an undue financial or administrative burden." *Id.* at 532-33 (footnote omitted; emphasis added). This test will be employed here. *See Tri-Cities Holdings LLC v. Tenn. Health Servs & Dev'p Agency*, No. 2:13-CV-305, at *9 n. 13 (E.D. Tenn. Aug. 25, 2017) ("Reasonable accommodations are likewise analyzed under the framework for intentional discrimination.").

---

[5] The partial overruling was inconsequential for present purposes. The third element in *Tucker* required a showing that the discrimination be "solely" because of the disability. *Tucker*, 539 F.3d at 535. *Anderson* simply removed the sole-causation requirement, as have I in the quote from *Tucker* that follows above. 798 F.3d at 357 n. 1.

In any event, the core of any reasonable access claim is that the plaintiff had a disability and was deprived services because of it. *Lyon*, 2016 WL 6563422, at *2. Those are the disputed points here. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The definition of "disability" is the same under both the ADA and the RA: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual," "(B) a record of such an impairment," or "(C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1) (ADA definition); *see also* 29 U.S.C. § 705(9) (applying the ADA definition to the RA).

The statutes and accompanying regulations anticipate the possibility that a public entity will need to provide interpreters. As a general matter, "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 U.S.C. § 35.160(a)(1). Accordingly, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 U.S.C. § 35.160(b)(1). "Auxiliary aides" include "qualified interpreters or other effective methods of making aurally delivered materials available to individuals

with hearing impairments." 42 U.S.C. § 12103(1)(A); *see also* 28 U.S.C. § 35.104(1) (defining "auxiliary aids" as including "[q]ualified interpreters on-site or through video remote interpreting (VRI) services").

Thus, an ADA or RA claim can rest on the failure to provide interpreters. In deciding whether these aids are necessary, "the public entity typically is required to consider the [qualified individual's] request, 'unless it can demonstrate another effective means of communication exists or that use of the means chosen would not be required under [28 C.F.R.] § 35.164,'" which absolves entities from having to take actions that fundamentally alter their programs or services or impose an undue burden. *Tucker*, 539 F.3d at 533 (quoting *Bircoll v. Miami-Dade Co.*, 480 F.3d 1072, 1082 (11th Cir. 2007)).

### b. Factual Background and Arguments

The case against Klatt stems from a misconduct proceeding he held in December 2013 concerning allegations against Plaintiff. *Burley v. Mich. Dep't of Corrections*, No. 16-cv-10712, 2016 WL 11259277, at *3 (E.D. Mich. Nov. 30, 2016), *Rep. & Rec. adopted by* 2017 WL 877219 (E.D. Mich. Mar. 6, 2017); (R. 148, PageID.2057.)[6] According to the grievance Plaintiff filed, Klatt denied his request for an interpreter during the hearing, even after being informed that Plaintiff could not hear the proceedings. (R. 148, PageID.2057.) Shortly after the hearing Plaintiff sent a letter to Jacque Koenigsknecht, a prison ADA

---

[6] Plaintiff's complaint states,

> Klatt was personally involved in all aspects in denying me an accommodation for my disability. He was subjectively and objectively aware of my facts and surrounding circumstances of my medical condition. He refused to accommodate my hearing impairment.

(R. 1, PageID.37.)

coordinator, stating that Klatt had known about his hearing impairment but flatly refused to bring in an interpreter. (R. 148, PageID.2060.) Klatt reportedly responded to the request, "I don't do that. I am holding this hearing today." (R. 148, PageID.2060.) At the Step I stage of the grievance process, MDOC found no violation. (R. 148, PageID.2058.) Its response noted,

> Klatt did hold court on prisoner Burley who had asked for an interpreter. He was not given one. Prisoner Burley does having hearing issues but has hearing aides and also communicates well within the housing unit. . . . Klatt asked him questions during the hearing and Prisoner Burley was giving feed back and many times he stated make sure certain statements are placed into the body of the ticket. . . . At no time did Prisoner Burley tell . . . Klatt his hearing aid was not working.

(*Id.*) Plaintiff pressed forward through the grievance process and his claim was rejected for the final time at Step III. (R. 148, PageID.2054-56.)[7]

Klatt's present motion relies almost exclusively on an affidavit he swore in November 2018. (R. 148, PageID.2050-52.) In it, he claims that Plaintiff "responded appropriately to my questions" during the hearing "and even insisted that certain statements were record [*sic*] in the hearing report." (R. 148, PageID.2051.) "At no time did [Plaintiff] request the assistance of an interpreter nor did I ever form the belief that [Plaintiff] was unable to hear me," Klatt added. (*Id.*) If Plaintiff struggled to hear or participate, Klatt avers that he "would have contacted . . . Koenigsknecht . . . and requested those services." (*Id.*)

---

[7] In Klatt's earlier motion for summary judgment, he contended that Plaintiff had failed to allege he was personally involved in the alleged conduct. (R. 65, PageID.19.) That argument was rejected, as the Court found that Klatt had "not established that there is no issue of material fact regarding whether Klatt participated in this alleged denial of Burley's rights under the ADA and Due Process Clause." *Burley*, 2016 WL 11259277, at *14.

Klatt also mentioned Plaintiff's letter complaining to Koenigsknecht. According to Klatt, Plaintiff "was sent a response indicating that Health Services had recently evaluated him, and it was determined that he did not require the services of an interpreter. (Attachment #3)." (*Id.*) "Attachment #3" turns out to be Plaintiff's letter to Koenigsknecht and a single page containing an email exchange about Plaintiff's hearing impairment. (R. 148, PageID.2060-61.)[8] The exchange begins with an email from a nurse to Kent Filsinger on October 24, 2013, noting Plaintiff's broken hearing aid, which had gone unaddressed at a recent medical visit with Filsinger, and his request for "an interpreter for an upcoming video conference." (*Id.*) Filsinger replied that Plaintiff "can hear fine" and did not even need to read lips to communicate at their most recent appointment, on October 29—until, that is, Filsinger asked about the broken hearing aid, at which "point [Plaintiff] acted as if he needed to read my lips." (*Id.*) Filsinger did not believe Plaintiff needed an interpreter. (*Id.*) There is no mention, however, of anything being communicated to Plaintiff, as Klatt suggested in his affidavit. (R. 148, PageID.2051.)

While his motion does not rely on it, Klatt also testified at a deposition in June 2018. (R. 154, PageID.4056-65.) He had a "very limited recollection of the case," he said; "I recall that he is hearing impaired, but he had a hearing aid. But besides that, I couldn't tell you any more about him." (R. 154, PageID.4059.) He remembered the hearing impairment

---

[8] Plaintiff complains that the emails are hearsay and should not be relied upon in the motion for summary judgment. (R. 154, PageID.4005-06.) At the summary judgment stage, the "evidence should be admissible but does not necessarily need to be presented in an admissible form at this point." *Hill v. Walker*, No. 13-cv-13097, 2015 WL 521191, at *11 (E.D. Mich. Aug. 31, 2015). Regardless of whether the statements in the emails could be cast in an admissible form, I conclude Klatt's motion should be denied even if they were considered as evidence. Thus, I will discuss them in the analysis.

because they were in a unit that had accommodations for that disability, such as specialized telephones and lighting and a beeper system. (R. 154, PageID.4060.) It also had interpreters available "if needed." (*Id.*)

As for the misconduct hearing, Klatt testified those proceedings generally began with a guard issuing a prisoner a misconduct ticket. (R. 154, PageID.4061.) About two days later, Klatt would convene a hearing to review the ticket, ask the prisoner to explain the situation, and make a decision. (*Id.*) Klatt conducted the hearings alone and they were not recorded, nor did he take notes. (R. 154, PageID.4062.) Most hearings lasted 10 minutes, and that was Klatt's guess as to how long Plaintiff's took. (*Id.*) "I don't recall him ever requesting an interpreter," Klatt stated, adding that "if I wouldn't have been able to communicate with [Plaintiff], I would have never had the ticket. I would have never done the ticket. I would have called the administrative assistant and asked what we had to do." (*Id.*) Later, Klatt elaborated that if an interpreter was requested he would have told the assistant "we need an interpreter for this." (R. 154, PageID.4065.) While Klatt would have to request an interpreter for the prisoner to get one, he did not have authority to make the final decision. (*Id.*) In only two hearings out of thousands had anyone asked Klatt for an interpreter. (R. 154, PageID.4063.)

Plaintiff offered his version of events in a declaration dated December 26, 2018. (R. 154, PageID.4053-54.) He said that at the time of the hearing, he had special accommodations for his hearing, including permission to use a telecommunication device for the deaf and an assistant. (R. 154, PageID.4053.) Twice during the misconduct hearing

he asked for an interpreter because his hearing aid malfunctioned and twice Klatt refused

him. (R. 154, PageID.4053-54.)

Klatt argues that Plaintiff's discrimination claims fail because he has not

demonstrated intentional discrimination under the ADA and RA. (R. 148, PageID.1955.)[9]

The argument relies exclusively on Klatt's affidavit.[10] In essence, the brief credits the

---

[9] In what has now become a pattern, Defendants' argument blurs the line between a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim and a motion for summary judgment under Fed. R. Civ. P. 56 for failure to raise a genuine dispute as to material facts. Defendants caption their motion as one for summary judgment, (R. 148, PageID.1946), but then they lead off the analysis with a headings stating that Plaintiff has "failed to state claims under ADA Title II and RA § 504 against Klatt," (R. 148, PageID.1951.) They mashed these concepts together in a prior motion as well. *See Burley*, 2016 WL 11259277, at *8 ("[T]he state defendants do not argue that, even assuming the truth of Burley's statements, his claims fail as a matter of law. . . . Thus, the state defendants in reality appear to be arguing that there is no genuine issue of material fact regarding whether Burley suffered a violation of the ADA, RA, or any other right."). As in the prior motion, it appears that Defendants want to pursue a Rule 56 motion for summary judgment. Their core claim is that Plaintiff "has failed to demonstrate any intentional discrimination by ARUS Klatt." That contention depends upon extra-pleading evidence, which they discuss in their analysis. This evinces their intent to rely on Rule 56, because courts are generally precluded from examining extraneous materials Rule 12(b)(6) motions. *See Geiling v. Wirt Financial Servs, Inc.*, No. 14–11027, 2014 WL 8473822, at *4 (E.D. Mich. Dec. 31, 2014), *Rep. & Rec. adopted in relevant part by* 2015 WL 1529866 (E.D. Mich. Mar. 31, 2015).

[10] In the introduction to the brief, Defendants mention three other pieces of evidence. First, they reference (but do not provide a citation for) a January 13, 2011 audiology report stating that Plaintiff might exaggerate the extent of his hearing loss. (R. 148, PageID.1950.) Second, they note that this report is consistent with Plaintiff's testimony that "he's able to communicate without the aid of an interpreter provided 'the individual that I'm communicating with would have to articulate the words.'" (*Id.*, citing R. 130, PageID.1422.) Third, "[b]y way of example," they note that "on January 8, 2016, [Plaintiff] sat for his deposition in the case of *Burley v. Leslie*, Case No. 1:13-cv-599 (W.D. Mich. 2013) without the assistance of an interpreter. [Plaintiff] was able to participate in the deposition, responding to each question and never asked [*sic*] to have a question repeated or indicate that he did not otherwise here a question." (*Id.*) A transcript of the deposition is provided.

Defendants do not rely on this evidence in their analysis or explain its significance to the legal issues in this case. Rather, it is used as prefatory material, presumably emblematic of the medical record as a whole. But no other record evidence is discussed. Defendants simply purport to incorporate the "extensive history of medical contacts" set forth in an earlier motion. (*Id.*, citing R. 130.) This limited incorporation likewise fails to marshal any factual material for the legal arguments Defendants present here.

Moreover, these pieces of evidence have dubious value. The unsourced medical report of possible exaggerated hearing loss must be considered beside other evidence that suggests actual hearing loss, which I mention above. Defendants do not attempt to contextualize their lone medical report in light of the larger record, which spans nearly 2000 pages of medical documents. (R. 153.) Context was also necessary for the second piece of evidence, Plaintiff's statement. The snippet Defendants provide makes it appear that

affidavit as the truth and simply repeats its averments. (R. 148, PageID.1955-56.) Klatt

notes that Plaintiff responded appropriately at the misconduct hearing and never asked for

an interpreter, that Klatt would have contacted the ADA coordinator if Plaintiff had had

trouble hearing, and that Plaintiff "did file a complaint with [] Koenigsknecht and was

provided a response indicating that Health Services had recently evaluated him, and it was

determined that he did not require the services of an interpreter." (R. 148, PageID.1956.)

That evaluation, Klatt continues, "took place on October 29, 2013." (*Id.*) As support for all

these assertions, Klatt cites his affidavit.[11]

---

Plaintiff is generally fine without an interpreter. But the full testimony reveals something else, especially as it pertains to the misconduct hearing:

> Q.  You're able to communicate without the use of a sign language interpreter, correct?
>
> A.  I'm able to -- it depends. I would have to -- the individual that I'm communicating with would have to articulate the words. The interpreter here or any interpreter are to make sure I have effective communication, particularly of all high stakes interactions.
>
> Q.  What do you consider high stacks [*sic*] interaction?
>
> A.  Medical, psychological, educational, religious, misconduct hearings, misconduct reviews, . . .

(R. 130, PageID.1422.)

Finally, the transcript from Plaintiff's deposition in another case is a strange evidentiary offering. What the transcript reveals about Plaintiff's hearing is disputable, yet Defendants present it as though it speaks for itself, and they offer only a couple explanatory lines to suss out its significance. As Plaintiff points out, crucial information is missing about the deposition: "was [Plaintiff's] hearing aid functioning properly at the deposition?; How far away was he sitting from the questioner?; Was he facing towards or away from the questioner?" (R. 154, PageID.4006.) As a medical matter, it is unclear whether Plaintiff's performance at the deposition is inconsistent with hearing loss. That might be a question beyond a layperson's ken.

Overall, these problems sap the evidence of its usefulness in proving there is no issue of material fact.

[11] Klatt may have tried to add a sovereign immunity argument. If he meant to, he failed. During an interlude in his ADA and RA discussion, (R.148, PageID.1953-54), Klatt discusses *United States v. Georgia*, 546 U.S. 151 (2006). That case held ADA Title II abrogates state sovereign immunity "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment . . . ." *Id.* In other words, if the Title II action alleges violations that also amount to violations

Plaintiff characterizes Klatt's argument as resting on two assertions: that Plaintiff never requested an interpreter and that he did not need one. (R. 154, PageID.4004.) Regarding the first, Plaintiff says that Klatt's affidavit creates, at best, a "he said, he said" question of credibility that is inappropriate to resolve at the summary judgment stage. (*Id.*) Moreover, the grievance response suggested that Plaintiff had asked for an interpreter. (*Id.*) Regarding the second assertion, Plaintiff notes that MDOC provided him special accommodations, indicating it believed he had a hearing problem. (R. 154, PageID.4005.) As for the email attached to Klatt's affidavit, Plaintiff contends that it is "without context or supporting documentation and without an affidavit or testimony by Mr. Filsinger." (*Id.*) Further, the email conflicts with other evidence of hearing loss and therefore "does not eliminate the genuine issue of material fact as to this issue." (R. 154, PageID.4005-06.)

### c. Application

I find Klatt's argument unpersuasive. As a global matter, it cites exclusively to his own affidavit, too slender a reed to support tossing the entire case. "Without more, self-

---

of the Fourteenth Amendment, a State defendant is stripped of sovereign immunity. The Court provided a three-part test for resolving the issue, *id.* at 159, which Klatt here recites but does not apply, (R. 148, PageID.1953-54.) Instead, Klatt offers a misreading of *Georgia* that ends up looping him back into a pure ADA analysis: "Thus, in order for Burley to state a valid ADA Title II claim against the MDOC to avoid the Eleventh Amendment immunity enjoyed by MDOC, he must first state a claim under Title II." (R. 148, PageID.1954.) This tautology is not what *Georgia* says. To skirt sovereign immunity, the Title II claim must allege conduct tantamount to violating the Fourteenth Amendment. Klatt never measures Plaintiff's statutory claims against those available under the Fourteenth Amendment. Consequently, any sovereign immunity defense Klatt might be attempting to raise is woefully underdeveloped and consequently waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997). And even if not waived, the issue has already been decided against him in this case. A previous Report, which was adopted, found that Burley's ADA claims "also work a violation of the Fourteenth Amendment. . . . Therefore, Eleventh Amendment immunity offers no relief to the state defendants." *Burley*, 2016 WL 11259277, at *13. If Klatt could somehow evade these bars to his defense, and the ADA claim was dismissed, the RA claim would remain because MDOC accepts federal funds, which eliminates its Eleventh Amendment immunity for RA claims. *See Tanney v. Boles*, 400 F. Supp. 2d 1027, 1047 (E.D. Mich. 2005).

serving affidavits are insufficient to sustain a motion for summary judgment." *Jadco Enterprises, Inc. v. Fannon*, 991 F. Supp. 2d 947, 955 (E.D. Ky. 2014); *see also LNV Corp. v. Gebhardt*, No. 3:12–CV–468, 2014 WL 1092109, at *4 (E.D. Tenn. Mar. 18, 2014) ("While defendant argues that several of the signatures on the Note were forged, defendant has presented no evidence substantiating this claim other than her own affidavits, and it is well-established that such 'self-serving affidavits' are insufficient to sustain or avoid a motion for summary judgment." (citation omitted)); *Southern United States Trade Assoc. v. Unidentified Parties*, No. 10-1669, 2012 WL 579439, at *2-3 (E.D. La. Feb. 22, 2012) ("It is well-settled law that affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to sustain a motion for summary judgment. . . . [B]ecause Defendant's motion for summary judgment relies solely on his self-serving affidavits for support, and because the Defendant's credibility is a fact issue to be decided by the jury, the Court must conclude that summary judgment is inappropriate at this time."). Of course, "any affidavit by a party to a case is by nature self-serving," and this fact alone should not discredit the party's statements. *Hann v. Michigan*, No. 05-CV-71347, 2010 WL 1006206, at *10 (E.D. Mich. Feb. 25, 2010); *cf. C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) ("A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone."). But when the self-serving affidavit finds no factual support in the record, it can "carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004). Similarly, "affidavits may not be employed to resolve disputed factual issues," and thus they cannot be used to "simply attack[] the credibility of the opposing party's

18

witnesses . . . ." 10B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2738 (4th ed.); *see also Anderson*, 477 U.S. at 254 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Klatt's affidavit contravenes each of these principles. First, it lacks support from the record; or more precisely, Klatt never stops to highlight such material. The only relevant evidence mentioned in his affidavit or brief—only obliquely in his brief by a citation to his affidavit—is the short email exchange between the nurse and Filsinger. (R. 148, PageID.1956, 2051, 2061.) But those emails cannot support the weight of the affidavit.

For one thing, both the affidavit and the brief cite the emails for the proposition that Plaintiff received a response telling him he did not need an interpreter. (R. 148, PageID.1956, 2051.) But the emails say no such thing. Apparently, Klatt is referring to the December 29, 2013 letter Plaintiff wrote to the ADA coordinator after the hearing, which is provided with the email. (R. 148, PageID.2060.) Scribbled on the letter is a handwritten note signed on January 4, 2014, by the coordinator, Koenigsknecht, stating "[a]ccording to Health Services, on 10/29/2013 you were evaluated and you do not require an interpreter." (*Id.*) There is no indication this sheet was provided to Plaintiff. Worse still, Klatt does not explain why it would matter if Plaintiff had received it.

In a similar vein, the emails provide no context for Filsinger's claim that Plaintiff "can hear fine." (R. 148, PageID.2061.) This conclusion came after an evaluation, apparently by Filsinger, but no official record of the appointment is provided. Nor is it clear

who Filsinger is. These questions go to the weight of the evidence, which the factfinder must evaluate.

Even if the emails were unimpeachable as evidence, they would still represent a just speck against the voluminous medical record that Klatt leaves unexamined. As can be seen in the above fact section, the record contains countervailing evidence. *See, e.g.*, (R. 88, PageID.939 ("Amplification is recommended bilaterally.")); (R. 88, PageID.958 ("[Officers] admit that [Burley] will generally not hear the loudspeaker when called . . . and will not hear when he is otherwise being called unless they gain eye contact (in order for him to read lips). They report no inconsistencies with these findings and that he is also always seen [with his] hearing aide [sic] on.")); (R. 88, PageID.959 ("During today's visit [Plaintiff] displays difficulty hearing normal conversation and appears that he is lip reading. When speaking to [Plaintiff] without him looking directly at me he doesn't acknowledge hearing me."); (R. 88, PageID.966 ("I then placed a very sensitive . . . stethoscope in his ears and spoke LOUDLY (behind a closed hand) and he DID NOT EVEN FLINCH.")). And as Plaintiff asserts, MDOC must have thought he had some degree of impairment since it granted him a "special accommodation" due to his hearing loss. (R. 130-5, PageID.1352; R. 139, PageID1636-1637.) Thus, to credit the emails as dispositive would require weighing conflicting evidence, which, again, is a job for the factfinder.[12]

---

[12] This conclusion is not inconsistent with the earlier dismissal of Plaintiff's Eighth Amendment claim against former defendant Dr. Scott Holmes. *Burley v. Quiroga*, No. 16-cv-10712, 2019 WL 2208560, at *12-17 (E.D. Mich. Jan. 25, 2019), *Rep. & Rec. adopted by* 2019 WL 1147023 (E.D. Mich. Mar. 13, 2019). That Report involved Dr. Holmes's denial of a second hearing aid or "assistant" (perhaps an interpreter, although the exact purpose of the assistant was never made clear) for Plaintiff. The Court concluded that

The rest of Klatt's affidavit invites a trial, not a summary dismissal. Most directly, his assertion that Plaintiff never requested an interpreter clashes with Plaintiff's avowals that he did make that request—an assertion he has repeated in the grievance, (R. 148, PageID.2057), the letter to the ADA coordinator, (R. 148, PageID.2060), the complaint, (R. 1, PageID.37), and his declaration (R. 154, PageID.4053-54). These statements set the groundwork for a credibility duel that cannot be held at the summary-judgment stage.

Thus, Klatt has failed to demonstrate that the material facts are undisputed. The elements of Plaintiff's prima facie case that Klatt appears to attack—whether Plaintiff is disabled and whether he was denied services due to that disability—are disputed issues with, at present, conflicting evidence. It may be that Klatt could explain why the evidence of Plaintiff's disability does not create a genuine dispute under the ADA and RA standards. But he has not attempted to make that showing. Consequently, I recommend denying Klatt's motion for summary judgment.

### 4. Defendant Gilkey

The second issue is, frankly, a mess. The key question is whether Gilkey was named as a party to the case in the original complaint or the amended complaint. If the former, Plaintiff's claim was timely; if the latter, it would be barred by the statute of limitations.

---

Plaintiff had made no effort to show the medical necessity of these treatments, particularly the second hearing aid. *Id.* at *14. The legal standard in that case demanded more of Plaintiff than the one here. *Id.* at *13 (noting that he had to show that he received "care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" (quoting *Rinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018))). And Plaintiff did less to meet that higher standard than he has done to satisfy the relatively more lenient requirements here. Moreover, the present matter focuses not on Dr. Holmes's treatment but on whether Plaintiff needed an interpreter at a particular misconduct hearing. Thus, both the issue and Plaintiff's performance addressing it were different in the prior motion.

### a. Legal Background

In determining the timeliness of a claim, 42 U.S.C. § 1983 offers no "statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980). Instead, Congress "endorse[d] the borrowing of state-law limitations provisions where doing so is consistent with federal law." *Owens v. Okure*, 488 U.S. 235, 250 (1989). In Michigan, the relevant statute of limitations is Mich. Comp. Laws. § 600.5805(2), which provides three years from the date of accrual in which to bring a personal-injury action. *See Hardin v. Straub*, 490 U.S. 536, 540 (1989) (applying § 600.5805(2) in § 1983 action); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (same). The limitations period is tolled while prisoners exhaust their administrative remedies through the grievance process. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

### b. Factual Background and Arguments

Gilkey does not calculate the start of the limitations period, *i.e.*, when Plaintiff's claims accrued, with any particularity. Perhaps this is because Plaintiff's original and amended complaints do not provide the dates on which Gilkey committed the wrongs giving rise to this action. But Plaintiff's grievance forms indicate that the relevant actions began on June 10, 2012, when Plaintiff began asking Gilkey for permission to use a TDD. (R. 154, PageID.4026.) His final request came on November 1, 2012. (*Id.*) The dates of Gilkey's denials—the wrongs that would commence the limitations period—are not provided. As a result, the precise accrual date is unknown.

Instead, Gilkey appears willing to give Plaintiff a full three years—the entire limitations period—from the date the grievance process ended, on June 19, 2013. (R. 148, PageID.1958; *see also* R. 154, PageID.4010 (Plaintiff notes that "[i]t is uncontested that the statute of limitations had therefore not expired until June 19, 2016.").) I will assume this is correct—even had the period run for a few days before it was tolled by the start of the formal grievance process (on November 13, 2013), the difference of a couple days would have no effect on this case.

Plaintiff filed his original complaint on February 25, 2016. (R. 1.) In that complaint, Gilkey is absent from the caption. (R. 1, PageID.1.) He also fails to appear in the list of defendants Plaintiff provides near the start of his complaint. (R. 1, PageID.5-8.)[13] Later, after Plaintiff had listed his legal claims, the complaint contains a section entitled "Personal Involvement of Defendants.'" (R. 1, PageID.32.) There, under the entry for Ionia Correctional Facility defendants, Gilkey at last makes his appearance. The complaint states:

> Defendant RUM [*i.e.*, Resident Unit Manager] Guilkie was personally involved when he refused to afford me an accommodation for my hearing disability. I spoke with RUM Guilkie on at least 3 occasions and did seek an accommodation, however, he refused to provide me one. Rum [*sic*] Guilkie retaliated against me and had me moved to the back of the unit. Mr. Guilkie strictly refused to afford me an accommodation. Rum [*sic*] Guilkie intentionally subjected me to extreme emotional distress by not affording me an accommodation. Guilkie was personally involved in all aspects of denying me an accommodation for my hearing impairment.

_____

[13] That list does include, however, a "John Does" entry for future defendants who would "be identified in the course of this litigation." (R. 1, PageID.8.) But this did not encompass Gilkey because, as I will next explain above, the complaint elsewhere names Gilkey. Thus, it was not the case that Plaintiff was simply unaware of the identity of a "John Doe" defendant who turned out to be Gilkey.

(R. 1, PageID.36.) Gilkey is not mentioned again in the complaint.

The first thing to note is that Plaintiff misspelled Gilkey's name. Normally, such a mistake is barely worth noting even in a footnote. Here, however, it has caused problems having some bearing on the case's outcome. The trouble was, as the parties later discovered, another MDOC employee named Gerald Gilkie worked as an Assistant Resident Unit Supervisor (ARUS) at the same facility as our Gilkey. (R. 133, PageID.1448; R. 154, PageID.4036.) By the time Plaintiff sought to serve process—more on that below— RUM Gilkey had retired but ARUS Gilkie remained. (R. 133, PageID.1448-49.) What happened next can be easily guessed: ARUS Gilkie accepted service. (*Id.*) It took some time and consternation to sort things out, but there is now no doubt that RUM Gilkey was the man Plaintiff meant to reference in the original complaint.[14]

On June 30, 2016, a few months after filing his original complaint, Plaintiff offered a "Proposed Amended Complaint" that again referenced Gilkey in the body but not the caption.[15] (R. 58, PageID.279, 281.) The new material did not add much to the allegations except for a few factual details and new labels characterizing Gilkey's actions as discriminatory.[16] The motion to amend as to Gilkey was granted March 6, 2017, *Burley*,

---

[14] In a previous Report, I observed that "Guilke," who we now know is RUM Gilkey, was "discussed in Plaintiff's original complaint," *Burley v. Mich. Dep't of Corrections*, No. 16-cv-10712, 2016 WL 11259277, at *3 (E.D. Mich. Nov. 30, 2016), although I also mistakenly observed that Gilkey was not mentioned until the amended complaint, *id.* at *6.

[15] And contrary to E.D. Mich. LR 15.1, which Plaintiff himself cited, the proposed amended complaint did not "reproduce the entire pleading as amended" but instead listed allegations to be added to the original complaint, which was not reproduced. *See Burley*, 2016 WL 11259277, at *2.

[16] It states:

Defendant RUM Guilkie was personally involved in all aspects of denying me a reasonable accommodation when he refused to equip the housing unit with emergency alarms (visual

24

No. 16-cv-10712, 2016 WL 11259277, at *2-3, *Rep. & Rec. adopted by* 2017 WL 877219 (E.D. Mich. Mar. 6, 2017), although due to the confusion about Gilkey's name, he was not served process until July 16, 2018, (R. 135, PageID.1459.)

Plaintiff appears to offer alternative arguments for why his claim against Gilkey was timely. First, he contends that because his "original complaint names Gilkey as a defendant in the substantive allegations . . . [his] claims against [Gilkey] are not barred by the statute of limitations." (R. 154, PageID.4010.) This could be read as asserting that for purposes of the statute of limitations Gilkey was made a party to the case in the original complaint and the claims against him in that complaint thus were timely.

In support of this first argument, he cites cases for the proposition that if a plaintiff identifies a defendant in the body of the complaint, but not the caption, the plaintiff should be allowed to amend the complaint. (R. 154, PageID.4012 (citing 5A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1321 (4th ed.); *Crisp v. Caruso*, No. 14-CV-14132, 2015 WL 9489605, at *2 (E.D. Mich. Dec. 30, 2015); *Green v. G2 Secure Staff, LLC*, No. 07-409-C, 2008 WL 782612, at *2 (W.D. Ky. Mar. 21, 2008)).) But once he mentions the amendment process, he has launched a new argument, wittingly or not. This is because—as explained

---

aids), and did subject me to a high risk of injury to my health and safety when he refused to install the housing unit with visual aids for fire alarms, emergency situations, and other alerts that I would be informed. Mr. Guilkie did further discriminate against me by not affording me reasonable accommodation for my hearing disability, and did further alienate me from my family and friends, and did further cause me to loose relationships by failing to assure I was reasonably accommodated with visual aids for my disability. I spoke with Mr. Guilkie on numerous occasions and did inform he personally of the problems I was having in my everyday living and he said he did not care, I was in prison. He further denied me an assistant. He exercised disparate treatment towards me where he treated me differently than the African prisoners. [*sic* throughout]

(R. 58, PageID.281.)

below—the materials he cites do not purport to cover a situation like this one where the amendment came after the expiration of the limitations period. Instead, to be timely, an amendment made after the limitations period ends must relate back to the original complaint under Fed. R. Civ. P. 15. While the relation-back doctrine goes unmentioned in his brief, a reasonable reading would find that it constitutes a second argument: the amended complaint relates back to the first for purposes of the statute of limitations.

### c. Application

The question presented is whether Plaintiff's claim against Gilkey was timely because either (1) Gilkey was made a party to the case in the original complaint despite not appearing in the caption, or (2) the amendment to the complaint added Gilkey as a party and related back to the time the original complaint was filed.

### i. How "Party" Status Affects the Statute of Limitations

The analysis begins with a few basic principles about the relationship between statutes of limitations, the commencement of an action by filing a complaint, and a person's status as a party. *See generally* 4 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1056 (4th ed.) (noting that the relationship between Fed. R. Civ. P. 3, concerning commencement of actions, "and the measurement of statutes of limitations has long been a matter of controversy and considerable confusion," and that "[q]uestions remain . . . about how statutes of limitations operate in federal court"). Specifically, it must be explained how and why becoming a "party" affects the statute of limitations analysis. This inquiry is necessary because the dispute here centers on when the claim against Gilkey was made, which in turn depends on when Gilkey was sufficiently identified as a defendant against whom Plaintiff

was lodging the claim. There is no dispute at this time over the substance or sufficiency of the claim, but only whether the complaint did enough to name Gilkey as its target.

As noted above, § 1983 actions borrow the state statute of limitations, which here provides plaintiffs three years. *Carroll*, 782 F.2d at 44. However, "when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary." *West v. Conrail*, 481 U.S. 35, 39 (1987). For that reason, *West* applied the general rule of when an action commences, Fed. R. Civ. P. 3, even though the statute of limitations came from elsewhere. *Id.* Courts in this District have extended this reasoning to § 1983 actions, applying Rule 3 over differing state laws. *See, e.g.*, *Vandiver v. Vanbinder*, No. 08–CV–10508, 2011 WL 7102338, at *3-4 (E.D. Mich. Oct. 26, 2011) (collecting cases), *rep. & rec. adopted by* 2012 WL 252819 (E.D. Mich. Jan. 26, 2012).[17]

---

[17] The choice of Rule 3 as opposed to Michigan's rules has real effect and deserves explanation. At first blush, it might appear that the two bodies of law are identical. Indeed, the relevant provisions all state that an action begins when a complaint is filed. Fed. R. Civ. P. 3; Mich. Comp. L. § 600.1901; Mich. Ct. R. 2.101(A). But Mich. Comp. L. § 600.5856(a) introduces a wrinkle: the limitations period in Michigan will stop running "[a]t the time the complaint is filed, *if* a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules." (Emphasis added.) This means that if the complaint is filed within the period, and service of process is made in the time provided, which is 91 days after the complaint is filed (with a "good cause" exception), Mich. Ct. R. 2.201(D)-(E), the claim will be timely and will not be barred by the statute of limitations. *See, e.g.*, *Latessa v. Michigan Inst. of Urology, PC*, No. 331476, 2017 WL 2302588, at *3 (Mich. Ct. App. May 25, 2017) ("Because plaintiff failed to serve defendants with the original summons and complaint within the time set forth in the court rules or otherwise timely seek a second summons in accordance with MCR 2.102(D), the statute of limitations in this case was not tolled under MCL 600.5856(a) by the filing of the complaint . . . ."). As explained more below, the federal rules do not hinge the statute of limitations on the service of process. Instead, Fed. R. Civ. P. 4 establishes how and when process must be served.

To be sure, as noted, the specific commencement provisions in our rules and Michigan's are the same, and Mich. Comp. L. § 600.5856 is the sort of state tolling law that federal courts normally use in § 1983 actions. From that perspective, it might seem that the statute does not conflict with federal law as much as add to it a tolling provision, just as in any § 1983 action that looks to state law. How then, is there a conflict requiring federal courts to ignore the state statute?

The problem is that utilizing the statute would incorporate Michigan's rules on service of process: if service was untimely, then the action was untimely as well for purposes of the statute of limitations. As such, despite the apparent consonance of federal and Michigan law on commencement, these bodies of law

But as a leading treatise notes, this conclusion as to commencement does not answer whether the "mere filing" of the action satisfies the statute of limitations so to "toll or stop the running of the statute," or whether "further steps, such as service of the summons and complaint . . . , be completed within a specified period of time following the filing . . . ." 4 Wright & Miller, *supra*, at § 1056. Nonetheless, federal caselaw has settled on the general rule that "filing a complaint suffices to satisfy the statute of limitations" in a lawsuit "on a right created by federal law . . . ." *Henderson v. United States*, 517 U.S. 654, 657 n. 2 (1996) (citing *West v. Conrail*, 481 U.S. 35, 39 (1987) ("[W]hen the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not

---

clash. For purposes of the limitations period in Michigan law, a case only conditionally commences when the complaint is filed; that commencement can be undone if the service of process rules are flouted.

Applying § 600.5856, then, would supplant Rule 4's provisions. And it would be particularly irksome for federal courts, which must issue subpoenas and, in certain cases, actually manage service of process in conjunction with the United States Marshals. 28 U.S.C. § 1915(d); FRCP 4(c)(3). When Rules 3 and 4 are read together, there is no gap left for Mich. Comp. L. § 600.5856 to fill, and thus the logic of *West* leads to the conclusion that the statute does not apply. *See Lewis v. City of Detroit*, No. 05-70667, 2006 WL 800743, *4-6 (E.D. Mich. Mar. 28, 2006) (providing an extensive discussion on the topic, collecting cases, and concluding that "[i]n this case, because there is no gap in federal law, Rules 3 and 4(m) of the Federal Rules of Civil Procedure govern questions relating to filing and service in Plaintiffs' § 1983 action against Defendant").

This reasoning is supported by a pre-*West* Sixth Circuit case, *Macon v. ITT Continental Baking Co., Inc.*, 779 F.2d 116, 1172 (6th Cir. 1985). Addressing a different statute, the court analogized to § 1983 actions, noting that some states "provide that service of process rather than the filing of the complaint tolls the statute of limitations, but when federal courts have borrowed state statutes of limitations in section 1983 actions, they have *not* also 'borrowed' those states' rules concerning when a statute is commenced for statute of limitations purposes[.]" *Id.* "Therefore," the court continued, "even if a state statute of limitations is borrowed and that state's rules also provide that service, not filing, tolls the statute of limitations, '[t]he prevailing rule among the federal courts of appeals is that Rule 3 [of the Federal Rules of Civil Procedure] governs the time of commencement of the action in cases where a federal matter or cause of action is involved.'" *Id.* (citation omitted); *see also Davis v. Bishop*, No. 5:12–CV–272, 2013 WL 5350520, at *2 (E.D. Ky. Sept. 23, 2013) (applying *Macon* to § 1983 action). Thus, Rule 3, not Mich. Comp. L. § 600.5856, controls in this case.

28

barred if it has been 'commenced' in compliance with Rule 3.")); *Cameron v. Mesko*, No. 12–11206, 2012 WL 5328680, at *3 (E.D. Mich. Oct. 29, 2012) ("[T]he statute of limitations was tolled upon the filing of the initial complaint [pursuant to Rule 3] regardless of the fact that Plaintiff failed to serve the named defendants within the time set forth in Federal Rule of Civil Procedure 4."); *Johnson v. Raba*, No. 93 C 2285, 1996 WL 450821, at *5 (N.D. Ill. Aug. 6, 1996) ("A suit in federal court commences with the filing of the complaint, not service on the defendant, Rule 3 . . . .").

Service of process is therefore not required to toll the statute of limitations. *Cf. Schiavone v. Fortune*, 477 U.S. 21, 30 (1986) ("We are not inclined, either, to temper the plain meaning of the language by engrafting upon it an extension of the limitations period equal to the asserted reasonable time, inferred from Rule 4, for the service of a timely filed complaint. Rule 4 deals only with process. Rule 3 concerns the 'commencement' of a civil action."). Indeed, a plaintiff has a specific timeframe, prescribed in Fed. R. Civ. P. 4(m), for serving process: 120 days, with exceptions for "good cause." The failure to meet that deadline can, like failure to file within the limitations period, lead to dismissal. *Id.*; *see also Whitley v. United States Air Force*, 932 F.2d 971, 1991 WL 78233, at *2 (7th Cir. May 15, 1991) (noting that even if an entity not appearing in the caption of a case was deemed to be a party, making the complaint timely, the claim against it would still be dismissed for not complying with Rule 4's deadline). But such a dismissal has nothing to do with the statute of limitations. Instead, Fed. R. Civ. P. 12(b)(4) specifies a particular mechanism for raising the defense of "insufficient service of process."

So a complaint must be filed—*i.e.*, the action must be commenced—within the limitations period. A timely-filed complaint, however, is timely only as to the claims it contains against the persons it identifies (and the claims later added by an amendment that relates back to the original filing). "[A] person must be made a party within the period of limitation[.]" *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005). Being a "party" to an action simply means being "[o]ne by or against whom a lawsuit is brought." *Black's Law Dict.* (10th ed.); *see also id.* (defining "party" also as "anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment"). Consequently, "the statute of limitations continues to run in favor of an alleged [defendant] until it is made a party to the suit." *Shanes v. Shaikh*, No. 264651, 2007 WL 517361, at *2 (Mich. Ct. App. Feb. 20, 2007). This means that compliance with the statute of limitations is measured on a party-by-party basis. "[T]he filing of a complaint against a party stops the running of the statute of limitations as to the claim against that party but not as to new parties." *Ringrose v. Engelberg Huller Co., Inc.*, 692 F.2d 403, 405 (6th Cir. 1982).

For this reason, when a defendant is later added to an action by an amendment, it is "well settled" that "the filing the filing of the amendment constitutes the commencement of the action in so far as such new defendant is concerned. The statutory period runs until the time of the filing of the amendment, and if at that time the action is barred, a party thus subsequently brought in may avail himself of the plea." *Forest v. Parmalee*, 60 Mich. App. 401, 406 (1975) (quoting *Change in party after statute of limitations has run*, 8 A.L.R.2d 6, § 53).

30

As such, to satisfy the statute of limitations as to a claim against a particular person, the plaintiff must bring that claim against that person, *i.e.*, make them a defendant party, in a timely-filed complaint.[18] Put differently, a filed complaint tolls the limitations period as to claims against individuals who are sufficiently identified as defendants. *See Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (applying Michigan law and holding that the "action was never commenced," and thus the limitations never tolled, "as to the 'Does' [*i.e.*, fictitious placeholder parties named in the original complaint] because they were not *identified*").[19]

### ii.  When a Person Becomes a "Party"

The question then becomes whether the plaintiff has successfully identified a person in a complaint so as to make him or her a party to the suit. If so, and the complaint was filed before the limitations period expired, then the claim was timely made. If not, the action has not commenced against that person, *i.e.*, he or she is not a party, and the statute of limitations continues to run. *See Forest*, 60 Mich. App. at 406.

Most courts begin this analysis by citing Fed. R. Civ. P. 10(a), which states that "every pleading must have a caption with . . . a title . . . . The title of the complaint must

---

[18] Of course, as discussed above, the person must eventually be served process, or else he or she is a party in name only. *Cf. Tia v. Criminal Demand As Set Forth Per Investigation*, No. No. 10–00441, 2010 WL 3001912, at *3 (D. Haw. July 30, 2010) ("One cannot become a party without being named and served, and without becoming a party, one cannot defend."). But failing to serve the defendant does not make a complaint untimely; rather, it subjects the complaint to dismissal for violating Fed. R. Civ. P. 4.

[19] *Bufalino* adds that the limitations period was not tolled because, in addition to not being identified, the Does were never served process. *Id.* The requirement that the defendants be served came from Michigan's law. But as discussed above, in footnote 17, Michigan's law on service of process does not apply. *See Cameron*, 2012 WL 5328680, at *3-4. *Bufalino* never directly addressed the question.

name all the parties[.]" *See, e.g.*, *Aslani v. Sparrow Health Sys.*, No. 1:08–cv–298, 2009 WL 3711602, at *7 n. 9 (W.D. Mich. Nov. 3, 2009).[20] From here, however, courts have fractured into a few camps when addressing complaints with captions that lack an intended party. *In re C.P. Hall Co.*, 506 B.R. 751, 754-55 (N.D. Ill. Bankr. 2014) (noting the different views).

One group takes a hardline approach, most vociferously articulated in *Myles v. United States*, 416 F.3d at 551-53. The court, relying on Rule 10(a), rejected the argument that mentioning defendants in the complaint's body sufficed to identify them as a party: "to make someone a party the plaintiff must specify him in the caption and arrange for service of process." *Id.* at 551 (citing Fed. R. Civ. P. 10(a)).[21] That the plaintiff was *pro se* held little significance for the court, which noted that the leniency granted this class of litigants "concerns the substantive sufficiency of allegations and not preliminary steps such as identifying and serving defendants." *Id.* at 552.[22] The underlying concern, as the court expressed it, was that a defendant could not "defend without first becoming a party," and this must occur during the limitations period so that the individual is not subject to an "open-ended risk of liability." *Id.* Precedent from the Seventh Circuit did not preclude the result because it merely held that "when a *pro se* plaintiff has mentioned a potentially

---

[20] The cases discussed below apply federal law to the question of when a person becomes a party. Arguably, this reflects *West*'s approach because Rule 10(a) could be read as providing a federal answer to this question, thus obviating the need to borrow state law. In any event, no party has raised the issue of whether Michigan law should instead apply and I will therefore assume that federal law governs.

[21] Rule 10(a), the only source *Myles* cited for its pronouncement, does not mention service of process.

[22] As noted above, however, courts must assist indigent plaintiffs with serving process. 28 U.S.C. § 1915(d); FRCP 4(c)(3).

responsible person in the body of a complaint, and the conditions for relation back under Fed.R.Civ.P. 15(c) are satisfied, the judge should allow an amendment to make that person a party even if the plaintiff waits until after the suit has been dismissed." *Id.* The plaintiff in *Myles*, by contrast, had not sought an amendment. *Id.* In the end, the captioning error required dismissal of the case.

Despite *Myles*'s expansive language, it appears that the plaintiff had sought to not only add individuals referenced in the body but also change the nature of the claims against them from tort-based to constitutional. *Id.* at 551, 553. Thus, the error went beyond a simple failure to add the defendants to the caption. And, in any event, the court did not purport to overrule earlier cases holding that "in determining whether a party is named properly in a complaint, courts are not bound necessarily by the caption. . . . [T]his court has looked beyond the caption to determine the defendants in a case," when "the factual allegations in the complaint, together with references in the body of the complaint, clearly identified defendants not named in the caption." *Whitley*, 1991 WL 78233, at *1-2; *see also Donald v. Cook Co. Sheriff's Dep't*, 95 F.3d 548, 559 (7th Cir. 1996) ("The fact that Donald did not name the individual defendants in the caption of his motions to amend the complaint, however, is not dispositive. As we have noted, *pro se* complaints are to be liberally construed, and courts may construe them as having named defendants who are mentioned only in the body of the complaint.").

Cases in the Seventh Circuit, of course, mostly mirror *Myles*'s approach. *See Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("This is not enough to make it a defendant today—for it is missing from the caption, which must contain the names of all

parties, see Fed. R. Civ. P. 10(a) . . . ."); *Reynolds v. Fed. Bureau of Prisons*, No. 15–cv–00262, 2015 WL 3919513, at \*3 (S.D. Ill. June 24, 2015) ("The Court declines to substitute the United States in place of the Federal Bureau of Prisons. . . . In order to make someone a party, the plaintiff, not the Court, must name the party in the caption. . . . Plaintiff failed to do so here, and the Court will not undertake the task of deciding who Plaintiff sues.") ; *but see Juarez v. Lane*, No. 07-cv-4005, 2007 WL 1668061, at \*1-2 (C.D. Ill. June 8, 2007) (noting that the defendant mentioned in the body was not in the caption, and so was not served, and stating that "[t]his problem is easily resolved" by ordering the intended defendant to be substituted into the case and placed in all future captions).

But this approach is rare elsewhere. *See, e.g.*, *Drake v. Freedom Law Ctr.*, No. 13–226ML, 2013 WL 1566644, at \*2 (D.R.I. April 12, 2013) (dismissing complaint that identified one person in the caption and another as the "sole" defendant in the body of the complaint, noting that "[t]his deficiency is not a mere technicality," dismissing complaint, but granting leave to amend); *Tia v. Criminal Demand As Set Forth Per Investigation*, No. No. 10–00441, 2010 WL 3001912, at \*3 (D. Haw. July 30, 2010) (relying on *Myles*); *Aslani v. Sparrow Health Sys.*, No. 1:08-cv-298, 2009 WL 736654, at \*9 n. 15 (W.D. Mich. Mar. 12, 2009) ("Simply put, persons who are not named in the caption of a complaint are not parties. . . . [F]or the caption's *raison d'etre* is to define the roster of those who are legally party to the controversy. This is a reliable bright-line rule, and Aslani has not proffered any authority for departing from it to 'deem' individuals to be defendants in the original complaint despite his failure to name them in the caption.").

34

Curiously, Plaintiff here relies on one such case, *Crisp v. Caruso*, decided in this District: "Individuals who are not named in the caption of a complaint are not parties . . . ." 2015 WL 9489605, at *2. Appearing in the caption, then, was a necessary condition to being a party. The court went on to say that "[w]hen a party names an individual in the body of his complaint but fails to name that individual in the caption of the complaint, the way to correct that error is to file an amended complaint." *Id.* But there was no intimation that the amendment adding a new party—since the person was not a party before—after the statute of limitations had run would relate back to the original complaint under Fed. R. Civ. P. 15 and therefore be timely.

A larger group of courts will consider persons left out of the caption but mentioned in the body to be parties if the complaint sufficiently indicates that intent. *See Yeseta v. Baima*, 837 F.2d 380, 382-83 (9th Cir. 1988) (noting that while plaintiff should have named the intended defendant in the caption, "his failure to do so does not mean the action could not be maintained against the" defendant since it was identified in the body of the complaint (citing *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant."))); *Counce v. Wolting*, No. 13-3199, 2016 WL 2344560, at *3 (D. Kan. May 4, 2016) (construing a complaint to include various defendants who were not named in the caption but were identified as defendants in the body of the complaint); *Abecassis v. Wyatt*, 902 F. Supp. 2d 881, 911 (S.D. Tex. 2012) ("Although the caption may serve as a guide, courts look to the body of the complaint to determine the parties."); *Church v. City of Cleveland*, No. 1:10–cv–1399, 2010 WL

4883433, at *3 (N.D. Ohio Oct. 26, 2010) (collecting cases); *Benjamin v. Citibank South Dakota, N.A.*, No. 3:08CV-416, 2008 WL 5192239, at *2 (W.D. Ky. Dec. 11, 2008) ("The determination of whether an individual or entity is a party to the action 'hinges upon the allegations in the body of the complaint and not upon his inclusion in the captions.'"); *Wilske v. Granholm*, No. 08-13270, 2008 WL 4852678, at *2 (E.D. Mich. Nov. 7, 2008) (noting that the allegations in the body of the complaint determine who the parties are); *In re Randall's Island Family Golf Ctrs., Inc.*, 29 B.R. 55, 62-63 (S.D.N.Y. Bankr. 2003) ("The caption is not part of the statement of the claim, . . . and a defect in the caption should *never* be viewed as a fatal error. . . . The failure to comply with the 'caption' requirements of FED. R. CIV. P. 10(a) will generally be overlooked in the absence of prejudice, and at most, will result in an order directing the party to amend the caption to add the missing name."); *E.E.O.C. v. Int'l Assoc. of Bridge, Structural & Ornamental Ironworkers, Local 580*, 139 F. Supp. 2d 512, 525 (S.D.N.Y. 2001) ("[T]he caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim."); *Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.*, No. CV-95-1273, 1996 WL 497085, at *2 (E.D.N.Y. Aug. 26, 1996) ("However, where a plan [*i.e.*, the defendant] is sufficiently identified in the body of the complaint and where the plan administrator and the owners of the plan are named in are named in the complaint, the action may proceed."); *Madara v. Singular Music Pub. Co., Inc.*, No. 84-0006, 1987 WL 10115, at *2 (E.D. Pa., April 28, 1987) ("Pursuant to Fed. R. Civ. P. 10(a) & 15, a defective caption is not fatal when the court can ascertain the proper party from the body of the complaint and plaintiff can amend the complaint to correct any technical defect."); 35A C.J.S. *Federal Civil Procedure* § 302

(2019) ("[A] party not properly named in the caption of a complaint may still be properly before the court if the allegations in the body of the complaint make it plain that the party is intended as a defendant . . . .").

Under this view, the caption is not determinative, although it might be worth "considerable weight" when deciding whether a person is a party or not. *See Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006) (noting that "a caption is not determinative as to who is a party to a suit," but that "it is entitled to considerable weight," at least as to who the plaintiffs are). The intention to name a defendant mentioned only in the body should be clear. *Blasingim v. Hill*, No. 1:08-CV-2117, 2008 WL 11320088, at *1 n. 2 (N.D. Ga. Sept. 8, 2008). In determining this intention, the court should consider the caption, pleadings, service of process, and other "indications of the intent of the pleader." *E.E.O.C.*, 139 F. Supp. 2d at 525; *see also Gartin v. Par Pharm. Cos., Inc.*, 561 F. Supp. 2d 670, 679 (E.D. Tex. 2007) (citing law that a party can be identified properly by being named in the body but finding that the intended defendant was not so named here because the indications in the body were muddled, the plaintiffs never sought leave to amend, and the plaintiffs never objected to the court clerk's designation of the parties on the docket, which did not include the intended defendant).

This more lenient rule applies especially to *pro se* complaints, which are held to "less stringent standards." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). As one court noted, cases "have found *pro se* complaints to sufficiently plead claims against defendants even when not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." *Rogers v. Miller*, No. 16 Civ. 3610, 2017

WL 6542459, at *9 (E.D.N.Y Dec. 21, 2017) (collecting cases); *see also Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243-44 (10th Cir. 2007) ("[I]n a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are."); *Levesque v. Rutland Co. Sheriff's Dep't*, No. 09-cv-437, 2010 WL 4916567, at *2 (D.N.H. Dec. 1, 2010) (finding *pro se* complaint adequately named a defendant missing from the caption where the defendant was identified in the body of the complaint and the plaintiff did not object to the magistrate judge's construction of the complaint to include the defendant); *Lamb v. Davis*, No. CV208-160, 2009 WL 982037, at *2 (S.D. Ga. April 10, 2009) (finding that a mistaken caption did not provide grounds to dismiss a case, and instead ordering the court clerk to correct the caption); *cf. Gallegos v. State of La Code of Crim. Pro.*, 858 F.2d 1091, 1092 (5th Cir. 1988) (naming a statute as defendant did not justify dismissal when the plaintiff's custodian could be substituted as the defendant); *but see Myles*, 416 F.3d at 552 (observing, in this context, that the liberality afforded *pro se* litigants "concerns the substantive sufficiency of allegations and not preliminary steps such as identifying and serving defendants").

Yet even under this general approach, courts have emphasized that notice to the putative defendant—one of *Myles*'s key concerns—plays a role in determining whether that person has become a party. At least one court has required both that the party be "identified in the body of the complaint" *and* have "actual notice of a suit" before the plaintiff's failure to include a party in the caption will be deemed merely a "technical defect." *Nationwide Mut. Ins. Co. v. Kaufman*, 896 F. Supp. 104 (E.D.N.Y 1995). "Rather,"

the court continued, "the caption, pleadings, service of process and other indications of the intent of the pleader, are evidence upon which a district court will decide, in cases of doubt, whether an entity has properly been made a party to a lawsuit." *Id.* If a reasonable layperson could read these materials and realize he or she has been made a party, then a court can find the person to be a party. *Id.*; *see also Madara*, 1987 WL 10115, at *2 (noting that the caption was not determinative and, as an added justification for declining to dismiss, noting that the intended defendant (who had been mentioned in the body of the complaint) had already been properly served).[23]

An old Sixth Circuit decision, *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467 (6th Cir. 1964), is often cited for the proposition that the caption does not establish the parties. *See, e.g.*, *Greenwood v. Ross*, 778 F.2d 448, 452 (8th Cir. 1985) (noting that the caption is "not controlling in determining the parties," citing *Blanchard*); *Eberhard v. Old Republic Nat'l Title Ins. Co.*, No.: 1:11 CV 834, 2013 WL 12293449, at *5 (N.D. Ohio Sept. 13, 2013) (citing *Blanchard*); *Nationwide Mut. Ins. Co.*, 896 F. Supp. at 109 (citing *Blanchard*). In that case, however, the precise issue was whether the court had jurisdiction. The complaint had asserted diversity jurisdiction, but once that came into doubt, the plaintiffs sought an amendment to add the United States as a defendant in the caption and bring suit under the Miller Act. *Blanchard*, 331 F.2d at 468. The substantive allegations

[23] Somewhat less directly, a court observed that "merely naming a party in a brief, however, does not provide adequate notice" to enable a court to render judgment against the party. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). That is, if the party is simply named in the body of the complaint as a defendant but not put in the caption or served process, the court cannot yet exercise power over the party. But whether the court's judgment can reach an individual is not the same question as whether that individual is a party.

39

were unchanged. *Id.* The Sixth Circuit, looking to the allegations in the pending complaint, thought that there was enough "to invoke jurisdiction under the Miller Act without the necessity of referring to the Act by name." *Id.* at 469. Continuing, the court stated that "[i]t is true that the name of the United States does not appear in the caption of the complaint, but the caption is not regarded as containing any part of plaintiffs' claim. We must look to the allegations of the complaint in order to determine the nature of plaintiffs' cause of action. . . . We regard the failure to name the United States a party plaintiff in the original complaint at most a formal irregularity, which ought not to affect the jurisdiction of the District Court." *Id.* The "irregularity" could be cured by amendment.

*Blanchard* thus did not directly address the issue at hand. Rather, it involved investigating the complaint's allegations to establish the cause of action, not the parties' identities. As one court observed after a close reading of *Blanchard*, that case "in no way held, or even intimated, that merely calling someone a 'defendant' in the body of a complaint after failing to actually name them as parties defendant in the caption, is of no consequence when determining whether one timely asserted the claims against that person." *Aslani*, 2009 WL 3711602, at *13.

### iii.  Amendments Adding a New Party

The next principle to grapple with is amendments which add a party. While this relates to Plaintiff's alternative argument, it is important to discuss up front for context.

Almost every court—even those considering uncaptioned persons not to be parties—allows amendments to cure caption errors. *See* 5A Wright & Miller, *supra* at § 1321 ("If the body of the complaint correctly identifies the party being sued or if the proper

person actually has been served with the summons and the complaint, federal courts generally will allow an amendment under Federal Rule of Civil Procedure 15 to correct technical defects in the caption . . . ."); 27 *Fed. Proc., L. Ed.* § 62:106 (2019) ("However, where the alleged actions of an intended defendant are set forth in the complaint in a manner sufficient to put the intended defendant on notice of the allegations against him or her, he or she will not be dismissed from the case because his or her name was omitted from the caption, but the caption will be amended to include the intended defendant."); *see also Myles*, 416 F.3d at 552 (noting, and not overturning, prior caselaw that held an amendment should be allowed "when a pro se plaintiff has mentioned a potentially responsible person in the body of a complaint, and the conditions for relation back under Fed.R.Civ.P. 15(c) are satisfied").

Plaintiff's alternative argument here relies on the availability of amendment, noting that in *Crisp v. Caruso*, 2015 WL 9489605, at *2 (citing *Green*, 2008 WL 782612, at *2), the court stated that "[w]hen a party names an individual in the body of his complaint but fails to name that individual in the caption of the complaint, the way to correct the error is to file an amended complaint." *See* (R. 154, PageID.4012.) But these cases contain a potentially material distinction from the present matter: neither *Crisp* nor *Green*, the case it relied on, involved or addressed an amendment that would be considered to add a new party outside the statute of limitations.

Here, if Gilkey was a party in the original complaint, then the claim against him would already be timely. For example, in *Johnson v. Raba*, 1996 WL 450821, at *5, the court noted that a person not named in the caption was already a defendant because he was

discussed in the body of the complaint; consequently, the claim against the defendant was timely and no amendment was necessary. By contrast, if Gilkey was not made a party by the original complaint, then the amended complaint would essentially add him as a new party past the limitations period. It is not at all clear, from *Crisp* or *Green*—the cases Plaintiff cites—that such an amendment would be considered timely. The answer to that depends on Fed. R. Civ. P. 15's relation back doctrine.

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading" only in three scenarios: (1) when relation back is allowed under the "law that provides the applicable statute of limitations," Rule 15(c)(1)(A); (2) when the amendment "asserts a claim or defense" arising out of events set out in the original pleading, Rule 15(c)(1)(B); or (3) "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment" received enough notice that it would not be prejudiced by being brought into the suit and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Rule 15(c)(1)(C).

A plaintiff cannot rely on this Rule to slip in new parties via amendment once the limitations period closes. The relation-back doctrine in Michigan law—which supplies the statute of limitations and is potentially relevant under Rule 15(c)(1)(A)—"does not apply to the addition of new parties." *Miller v. Chapman Contracting*, 477 Mich. 102, 106 (2007)

(citation omitted); *see* Mich. Ct. R. 2.118(D); 1 *Mich. Ct. Rules Prac.*, Text § 2118.18 (6th ed.).[24]

As for a change of parties under Rule 15(c)(1)(C), "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)[(1)(C)(ii)]." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *see also Ham v. Sterling Emergency Servs. of the Midwest, Inc.*, 575 F. App'x 610, 615 (6th Cir. 2014) ("This court has held that claims against *additional* parties do not relate back."); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) ("Rule [15] allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations. Our approach is consistent with the holdings of every other circuit on this issue."); *Bufalino*, 404 F.2d at 1028 ("Nor can the defendants who were added by the amendment be deemed to have been parties to the original complaint under the fictitious designation of 'Does.' The action was never commenced as to the 'Does' because they were not identified nor served with process.").

---

[24] A statutory exception exists for claims "based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death." Mich. Comp. L. § 600.2957(1). In such cases,

> Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that nonparty. A cause of action added under this subsection is not barred by a period of limitation unless the cause of action would have been barred by a period of limitation at the time of the filing of the original action.

*Id.* § 600.2957(2). Even assuming this would apply to a § 1983 action, Plaintiff here could not benefit from it because there was no issue with identifying Gilkey.

Under this approach to relation back, if a person was not made a party to a suit in the original complaint, he or she could not be added by amendment in the post-limitations period. That is how the factual scenario in the present case has been handled by other courts. In one such case, where the person was named in the body of the complaint but not the caption, the Seventh Circuit held that the person was not a party. *Cash v. Marion*, 211 F. App'x 486, 488 (7th Cir. 2006). "And now," the court continued, "the opportunity for [the plaintiff] to amend his complaint yet again would do him no good. The two-year statute of limitations for a § 1983 claim arising in Indiana has run, . . . and '[w]e have consistently held that Rule 15(c)[(1)] does not provide for relation back under circumstances . . . in which the plaintiff fails to identify the proper party[.]'" *Cash v. Marion Co. Jail*, 211 F. App'x 486, 488 (7th Cir. 2006); *see also Houghtaling v. Eaton*, No. 14-CV-6416, 2017 WL 9517690, at *6 (W.D.N.Y. Sept. 29, 2017) (finding that adding a person referenced but not named in the original complaint would not relate back under Rule 15 and therefore the claim against the individual would be untimely), *Rep. & Rec. adopted by* 2018 WL 522342, at *6 (W.D.N.Y. Jan. 22, 2018) (and questioning "whether the addition of entirely new parties is permitted within the plain language of Rule 15(c)(1)(C)"); *Esang v. County of Cook*, No. 07 C 3540, 2009 WL 5166226, at *3 (N.D. Ill. Dec. 22, 2009) (rejecting relation back to add persons named in the body of the original complaint but who were not made parties by that complaint); *but see Jackson v. City of Elgin*, No. 09 C 2991, 2010 WL 3998097, at *3-4 (N.D. Ill. Oct. 8, 2010) (finding that an amendment to add an individual referenced in the original complaint related back).

Here, Plaintiff's amended complaint was filed after the statute of limitations had run on claims against Gilkey. Under the caselaw above, Plaintiff could not circumvent the limitations bar by adding Gilkey as a new party because such amendments do not relate back to the original complaint. The only way, then, for Plaintiff's claim to survive is if he sufficiently named Gilkey in the original, timely complaint.

### iv.  The Rule Applied in this Case

This case, then, turns on two questions: (1) should the Court adopt the rule that parties can be named in the body of the complaint even if they are absent from the caption? and (2) if so, did Plaintiff adequately identify Gilkey in the body of his original complaint?

Regarding the first issue, I conclude that the better rule allows parties to be identified in the body of the complaint. The contrary view—that a person must appear in the caption to be a party—lacks clear grounding in the text of Rule 10(a), or any other rule for that matter. Rule 10(a) does not purport to define the parties to a case, and it nowhere claims that only those individuals in the caption can be considered parties. Nor does it establish that dismissal is appropriate for violations. Instead, the Rule focuses on form, not substance—it says so in its title, "Form of Pleadings." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 221 (2012) ("The title and headings are permissible indicators of meaning.").

Because the Rule is silent about who the parties are, construing it to erect a formalistic requirement is not only textually unwarranted but also contravenes Rule 1, which states that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action

45

and proceeding." *See also Foman v. Davis*, 371 U.S. 178, 181-82 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957))). Tossing claims because the intended defendant was not in the caption, even if the complaint elsewhere makes irrefutably clear the person was meant to be a party, is nothing if not formalistic.

In addition, the weight of authority (described above) supports treating the caption as a non-dispositive, albeit important, guidepost in establishing the parties' identities. *See Williams*, 459 F.3d at 849; 5A Wright & Miller, supra at § 1321. Courts can consult other evidence of the plaintiff's intent, including how the person was characterized in other pleadings and whether process was served on that person. *E.E.O.C.*, 139 F. Supp. 2d at 525. But the plaintiff's intention must be clear, and the intended defendant must be referenced in the body of the complaint—party status cannot be conferred solely by materials or actions outside the complaint.

For these reasons, the failure to include a person in the caption should not be dispositive as to whether that individual is a party.[25] This conclusion leads to the second

---

[25] This does not mean that the requirement in Rule 10(a) is purely for convenience and can be dispensed with lightly. It plays an important role in providing "notice as to the parties in an action." *id.* (quoting *Rosasa v. Judson River Club Rest.*, No. 96 Civ. 0993, 1997 WL 316719, at *2 (S.D.N.Y. June 10, 1997). And becoming a party has far-reaching consequences. Once a claim is formally lodged in court, the defendants must be timely notified of the complaint and summoned to court so that they can begin to mount

issue here: did Plaintiff do enough to identify Gilkey as a defendant in his original complaint? This is a close question. The original complaint included Gilkey in neither the caption nor the list of parties a few pages later. And when Gilkey appeared much later, the misspelling of his last name proved particularly pernicious because, as noted, another individual with a remarkably similar name worked at the same location. The risk of confusion was therefore exacerbated. Further Gilkey's name has never graced a caption in this case, even after the amendments to the complaint. There is no evidence Gilkey had or should have had notice of the claims against him, and he was served well after the complaint was filed.

Ultimately, however, I conclude that Plaintiff did enough to name Gilkey as a defendant in the original complaint. Most directly, the complaint deemed "RUM Guilkie" to be a defendant in a section listing defendants, although not the first such section. As for

---

its defense. Fed. R. Civ. P. 4; *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). The statute of limitations serves a similar function, "preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (citation omitted). "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of RR. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944); *see also Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc.*, 456 Mich. 511, 515 (1998) (1998) ("Statutes of limitations . . . are construed to advance the policy that they are designed to promote. They prevent stale claims and relieve defendants of the protracted fear of litigation." (citation omitted)).

The day a person becomes a party, then, helps to establish the timeliness of the claims against it and sets in motion the procedures notifying the defendant and enabling its response. *See  Myles*, 416 F.3d at 552 ("[A] person must be made a party within the period of limitations[.]"). Thus it is critical that the complaint clearly convey who the defendants are. Adherence to Rule 10(a) obviates problems with notice and service of process. *Counce*, 2016 WL 2344560, at *3. But for the reasons above, Rule 10(a) does not foreclose the possibility that a person identified only in the body of the complaint can be a party.

the misspelling, the complaint correctly spelled neither Gilkey's name nor his similarly-named coworker, but it did indicate that the defendant was the RUM, which was a position only Gilkey held. Thus, the complaint reasonably specified Gilkey—there was no reason to think it was the coworker because the name provided in the complaint belonged to no one, and there was a reason to believe the complaint referenced Gilkey, given the "RUM" designation. Further, the complaint described Gilkey's conduct that formed the basis for Plaintiff's claim. The amended complaint did not appear to introduce Gilkey as though he were new to the case, but rather simply added details concerning the allegations against him.

The fact that no attempt to serve Gilkey was made until after the amended complaint might indicate that Gilkey was not an intended defendant. *Cf. Madara*, 1987 WL 10115, at *2. While Plaintiff could have done more, the failure to serve Gilkey earlier cannot be held entirely against Plaintiff. This is because he has proceeded *in forma pauperis*, entitling him to have the court and the United States Marshals effect service. 28 U.S.C. § 1915(d) (for Plaintiffs proceeding *in forma pauperis*, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases"); 28 U.S.C. § 566(c) ("Except as otherwise provided by law or Rule of Procedure, the United States Marshals Service shall execute all lawful writs, process, and orders issued under the authority of the United States." ); Fed. R. Civ. P. 4(c)(3) ("At the plaintiff's request, the court may order that service [of process] be made by a United States marshal or deputy marshal or by a person specially appointed by the court."); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) ("Rule 4[] and 28 U.S.C. § 1915(c) stand for the proposition that when a plaintiff is proceeding in forma pauperis the

court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process."). As a result, courts often find that if the Marshals serve process past the deadlines, *in forma pauperis* plaintiffs have "good cause" under Fed. R. Civ. P. 4(m) for the delay. *Bryd*, 94 F.3d at 219. But the plaintiffs must still take "reasonable steps . . . to identify for the court the defendants named in the complaint." *Id.*

In this case, the Court issued an order on April 5, 2016 for the Marshals to serve process on all defendants. (R. 6.) Later that same day, the Court clerk completed the summons forms and delivered them to the Marshals. (R. 7.) A summons for Gilkey was not included—an understandable enough oversight given his failure to appear in the caption, but not one that reflected Plaintiff's express choice of whom to serve.[26] It is true that Plaintiff never alerted the clerk to the mistake or asked that Gilkey be served and added to the caption. *Cf. Gartin*, 561 F. Supp. 2d at 679. But shortly after the first batch of parties were served, Plaintiff filed his amended complaint, which made more explicit his intention to sue Gilkey and which led to Gilkey being served. Thus, he brought the problem to the Court's attention in a relatively prompt manner. As such, the initial lack of service on Gilkey does not undercut Plaintiff's intention to name him as a defendant in the original complaint.[27]

---

[26] This observation does not predetermine any argument that Plaintiff's service on Gilkey was untimely under Fed. R. Civ. P. 4(m). Rather, the dates of service are here relevant only in determining whether Gilkey was an intended defendant in the original complaint.

[27] While the Court may have implicitly treated Plaintiff's motion to amend as adding Gilkey to the case, none of the previous orders or opinions addressed whether the original complaint included Gilkey as a party. *Burley*, No. 16-cv-10712, 2016 WL 11259277, at *16, *rep. & rec. adopted by* 2017 WL 877219, at

For these reasons, I suggest that Plaintiff named Gilkey as a defendant in the original complaint by expressly calling him a defendant and providing specific allegations against him. Consequently, Plaintiff's claim against Gilkey was timely and Defendants' motion to dismiss on this ground should be denied.[28]

### 5. Punitive Damages

---

*1-2 (E.D. Mich. Mar. 6, 2017). Consequently, my recommendation above is not inconsistent with or precluded by this Court's holdings in the present matter.

[28] Because this holding would resolve the issue, it is unnecessary to reach Plaintiff's separate argument that Defendants waived the statute of limitations defense. (R. 154, PageID.4007-09.) If the above recommendation is not adopted, and the Court addresses waiver, I would reject Plaintiff's alternative argument. The limitations defense can be waived by a defendant whose dithering in raising it prejudices the plaintiff. *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990). Here, Plaintiff accuses Gilkey of such delay, noting that it has been "nearly three years since Burley first filed his complaint, and well over two since he amended it—with this Court's permission—to fully flesh out his claims against Gilkey." (R. 154, PageID.4008.) What is more, Plaintiff claims, Gilkey could have presented the argument in the objections to my order recommending that the motion to amend be granted as to Gilkey. (*Id.*)

These contentions fail to persuade. For one thing, much of the delay Plaintiff bemoans came before the Court and parties realized that Gilkey was an intended Defendant and later while trying to find the right "Guilkie." Plaintiff had a hand in causing this holdup. In any event, Gilkey acted promptly once he was served: he filed the present motion a few months later, well within the timeframe the parties agreed to in their stipulation and order establishing deadlines. (R. 140, PageID.1794.)

Gilkey's failure to raise the issue in his objections is not grounds for finding waiver. Gilkey would have needed to argue that the proposed amendment was futile, and the standard for that is whether it could withstand a Rule 12(b)(6) motion to dismiss for failing to state a claim. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "Ordinarily," however, "dismissing claims as untimely under Rule 12(b)(6) is disfavored because plaintiffs have no duty to plead facts negating an affirmative defense, such as the statute of limitations." *Owner Operator Independent Drivers Assoc., Inc., v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008). It is only when the "proposed amended complaint's allegations demonstrate on their face that the applicable statute of limitations bars the claims that the amendment asserts, [that] the district court may properly deny leave to amend as futile." *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 500 (6th Cir. 2015). Plaintiff does not try to show that the amendment could have been denied as futile (because untimely) when it was first offered. Nothing in the allegations against Gilkey gave a sense for when the claim accrued. And, as noted above, the claim was subject to the grievance process, which tolls the statute of limitations period and which Plaintiff did not need to affirmatively describe in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As a result, the timeliness of the complaint only became clear with extra-pleading materials, such as the grievance form Plaintiff filed. Consequently, Gilkey was under no obligation to raise the defense in the objection or waive it forever.

Finally, Defendants seek to scotch Plaintiff's demand for punitive damages in the ADA claim. (R. 148, PageID.1951.) Their entire argument is this: "In his prayer for relief, [Plaintiff] seeks $20,000 in punitive damages from each Defendant. Punitive damages may not be awarded in suits brought under the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Accordingly, [Plaintiff's] request for punitive damages should be dismissed." (*Id.*) Plaintiff responds that his suit includes First and Fourteenth Amendment claims, for which punitive damages are available. (R. 154, PageID.4001.) Thus, according to Plaintiff, his request for punitive damages remains valid and should not be dismissed. (*Id.*) Defendants did not respond to this argument. (R. 155.)

Defendants are correct that punitive damages cannot be awarded for violations of the ADA (or the RA, though Defendants do not mention it). *Barnes*, 536 U.S. at 189. Consequently, Plaintiff cannot obtain punitive damages under these statutes.

This conclusion does not mean, however, that Plaintiff's punitive damages request must be dismissed. Although *Barnes* stated that punitive damages "may not be awarded in suits brought under" those statutes, the Court's decision could hardly be read to say that bringing an ADA or RA claim prevents a plaintiff from collecting punitive damages under other separate claims. It is not clear whether Defendants mean to wring *Barnes* for such a conclusion, or if they are satisfied knocking out the punitive-damages demand for the statutory violations but not for Plaintiff's other claims. Defendants' lack of analysis renders their argument impenetrable.

To the extent they mean to say *Barnes* crowds out all punitive damages from the case, they have offered no support for this sweeping conclusion and I would reject it. If

they intend to establish the unavailability of punitive damages under only the ADA and the RA, then they have gone just partway towards their goal: Plaintiff argues that he can maintain his punitive damages demand under his constitutional claims against these defendants. (R. 154, PageID.4001.) But the Court need not now decide whether Plaintiff is correct because defendants (under this more limited interpretation of their argument) have not raised the issue. *See generally Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. . . . [A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" (citation omitted)). Since Defendants have not attacked the possibility of punitive damages for the constitutional claims—indeed, have not addressed those claims at all—it would be premature dismiss Plaintiff's demand for those damages.

## III.  Conclusion

For the reasons above, I recommend that the Court **DENY** Defendants' motion for summary judgment. (R. 148.)

## IV.  Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy." Fed.

R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some

objections, but failing to raise others, will not preserve all the objections a party may have

to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to

be served upon this magistrate judge. Any objections must be labeled as "Objection No.

1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report

and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections

in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response

must specifically address each issue raised in the objections, in the same order, and labeled

as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court

determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 6, 2019                          S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 6, 2019                           By s/Kristen Castaneda
                                             Case Manager